MAYFIELD et al. v. KEY et al.     (No. 10501.)

(Court of Civil Appeals of Texas. Fort Worth. March 1, 1924.)

1. **Partnership ⊜⟶47—Creation by contract may be proved by circumstances.**

Creation by contract as well as other essential elements of relation may be proved by circumstances.

2. **Appeal and error ⊜⟶930(1)—Conflicts in evidence resolved in favor of appellee.**

Jurors are the judges of the credibility of witnesses and the weight to be given testimony, hence all conflicts are resolved in favor of the prevailing party.

3. **Mines and minerals ⊜⟶97—Evidence held to support finding of partnership in oil lease development.**

In an action for labor and board of hands, against alleged partners in development of an oil lease, evidence held to support finding that two defendants were partners.

4. **Mines and minerals ⊜⟶97—Evidence held not to show relationship of partner in oil lease development.**

In an action for labor and board of hands, against alleged partners in development of an oil lease, in which one defendant testified he had no pecuniary interest in lease, and there was no direct testimony that he had, held evidence insufficient to show that he was partner.

Appeal from District Court, Throckmorton County; W. R. Chapman, Judge.

Action by W. H. Key and others against J. N. Mayfield and others. Judgment for named plaintiff, and defendants appeal. Affirmed in part, and reversed and rendered in part.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, and B. F. Reynolds, of Throckmorton, for appellants.

M. S. Long, of Abilene, for appellee.

CONNER, C. J. Appellee Key secured a verdict and judgment in this case for $1,-191.46 upon a claim for labor and board of hands, against A. A. Haubert, J. N. Mayfield, William Allison, and Walter Manning, alleged to be partners in the development of an oil lease in Throckmorton county upon which it was alleged Key had labored as a driller and furnished board for other employees. The defendants by their verified answer denied the partnership alleged, but the issue was decided against them by the jury, and the sole question presented on this appeal is whether the evidence was sufficient to establish the partnership.

The proof shows without dispute that appellee was employed by A. A. Haubert, who was engaged in drilling an oil well upon a lease described in the petition. There was no evidence that the other defendants were directly connected with the contract of employment; the evidence relied upon as establishing the alleged partnership being circumstantial in character.

Chancellor Kent defined a partnership as:

"A contract of two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business; and to divide the profits and bear the loss in certain proportions."

The definition so given is approved in 30 Cyc. p. 349, with citation of numerous authorities in a note. The definition quoted is also approved, with citation of authorities, by the author of Ruling Case Law, vol. 20, p. 800, par. 2, in which the author says that in harmony with this definition the Supreme Court of the United States has held that those persons are partners who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions, citing Meehan v. Valentine, 145 U. S. 611, 12 Sup. Ct. 972, 36 L. Ed. 835.

[1] It is to be noted that in the definition approved the relationship is created by contract, but this, as any other essential element, may be proved by circumstances, and the question for our determination is whether the circumstances shown in this case sufficiently support the verdict of the jury to the effect that Mayfield, Allison, and Manning are partners, the defendant Haubert not having appealed.

[2] The evidence shows that on the 30th of March, 1920, Haubert, as party of the first part, and Allison and Mayfield, as parties of the second part, entered into a written contract whereby Haubert assigned to Allison and Mayfield for a consideration stated one-eighth of all the oil, gas, and other minerals produced from any well or wells to be drilled upon some seven specifically described tracts of land situated in Throckmorton county. Haubert, by the terms of the agreement, was to drill ten wells, for which he was to be paid $1,000 for the first five wells, and a like sum for the remaining five wells upon completion.

It was further provided that, in case any of the ten wells should produce oil or gas in paying quantities, the property should "then be developed according to the best practice of business." It was further agreed that Haubert was to deliver to Allison and Mayfield "free of charge in tanks at the well or wells an equal one-eighth part of all the oil produced and saved from said premises."

The contract further gave to Allison and Mayfield, upon completion of the ten wells, an option to purchase another undivided one-eighth interest in all of the oil and gas produced, for which they were to pay $200 for each well drilled in addition to the ten wells

first mentioned. The contract further recited that the Texas & Pacific Coal & Oil Company held an oil and gas lease on about 1,700 acres of land specifically described, and that, in the event Haubert should secure an assignment of said 1,700-acre lease, Allison and Mayfield should have an undivided one-eighth interest in all of the oil and gas produced therefrom.

Appellee Key testified to the facts of his employment by Haubert and of his labor and the board of the hands, about which there is no dispute, and further testified that, while drilling upon one of the tracts described in the contract above mentioned, and at which he performed the labor and furnished the board in question, he "saw Mr. Manning, Mr. Allison, and Mr. Mayfield there during the time I was drilling this well. Mr. Mayfield and Mr. Allison stayed there most of the time, and Mr. Manning was there occasionally. I heard Mr. Mayfield say something about paying the machine out at Albany. As to what he said, they told me before they went to Albany, that is, they were talking to Dutch (Haubert) and I together. That was their business down there. Mr. Haubert told me just before they started. I rode with them to town, and Mr. Haubert said they were going down to get the machine, and Mr. Mayfield and Mr. Allison would come back, and he would get me some money. I told him I would have to have money to board the men, and he said when he came back he would get money and pay me some money so I could get provisions. I did not hear Mr. Manning say anything about paying out the machine. I did hear Mr. Allison speak about it. He was talking about it a number of times, and said they were out $1,000 on the machine down there, getting it out. Mr. Mayfield and Mr. Allison were there around the well there most of the time, specially when we first began drilling. Mr. Manning was there occasionally during that time. I heard a conversation between Mr. Mayfield and Mr. Allison with Mr. Everett with reference to some hauling for the well, but not Manning. As to that conversation we had broken a bit off the stem, and had to take that to Breckenridge, and they got Everett to do the hauling, and after we got it loaded on Mr. Everett said something about getting his money. Dutch, that is Mr. Haubert, had promised him the money on the 1st, and said he was a poor man, working for wages, and would have to have his money on the 1st. He seemed uneasy about it, and Mr. Allison says, 'You need not be uneasy about that, we are behind him.' Mr. Mayfield says, 'We are going along, and we will meet you at Breckenridge.' Mr. Mayfield was standing there when Mr. Allison made the statement. He did not make any statement further than he said they would meet him in Breckenridge."

Appellee further testified that he saw Mr. Allison pay for hauling casing to the well, and for hauling casing away from the well; that finally before the completion of the well he told the parties that he was unwilling to further board the hands without payment, and they agreed to pay for a week's board in advance, and that, Allison, Mayfield, and Manning being present, Mr. Manning gave him a check for $30 in order to secure another week's drilling. He further testified that neither of defendants had ever agreed to pay him for his services, and that he never made any contract with Mr. Mayfield or Mr. Allison or Mr. Manning. In answer to a question as to what Mr. Allison, Mr. Mayfield, and Mr. Manning said to him about their interest in the well, he testified that:

"Just before we finished up the last well they were talking in regard to making another location. They called me out and asked me what I thought about it. Manning was the one that called me, and Mr. Mayfield and Mr. Allison was present. I told them I did not think it would be a good thing to make a new location, and Mr. Manning said he had already spent all the money he was going to on it."

A Mr. Hughes testified in behalf of appellee:

"I live at Woodson, Tex., in this county. I am engaged in the garage business. I have met Mr. Allison, one of the defendants in this suit, a few times. During the time they were drilling on the Woods lease near Woodson I had a conversation with him in my garage. As well as I remember he was in there and getting acquainted, and bought a little stuff for his car, and said, 'We are doing a little drilling here near town,' and said it looked pretty good or something to that effect, and that if we strike oil it will be a big help to the town and would help my business. That was about the substance of the story."

In behalf of defendants, Mr. Manning testified that he lived in Mineral Wells and not in Throckmorton county and never had; that he had been out where the well was being drilled near Woodson one time, about the middle of June, 1921; that he had no interest in the well; that—

"I did not have any interest in the oil and gas lease where that well was being drilled; none whatever. I never did own any interest in an oil and gas lease in that survey of land, T. E. & L. Co. land survey. I never did have any contract of any kind with Mr. Haubert. I never did enter into an agreement with him in regard to drilling this oil well or any well; no oil well at any time. I was not interested in any contract with the defendants Allison and Mayfield. I was not ever in partnership with them in any manner. I was never interested jointly with them in drilling this well. I was out there about the middle of June, 1921, where this well was being drilled. My purpose in going out there was that I learned that they were going to bring that well in. And I went out there for the purpose of seeing whether they got a producer or not. While there Mr.

Haubert told Mr. Mayfield and Mr. Allison that Mr. Key was complaining that he could not board the help any further unless they paid him some board in advance; otherwise he would have to shut the well down and stop boarding the help if they did not 'pay him some. Mr. Allison, as well as I remember, told me that they had spent all the money they cared to spend. The boys wanted to drill another week to another sand, and if he would go ahead and board the boys another week we would make him a donation of $30 for the board, and Mr. Mayfield asked me to give him my check. I gave him $30 by check, and Mr. Allison and Mr. Mayfield later gave me $10 apiece. That check was not given on account of any obligation I had with them. But I had property at Woodson, and I wanted to see the well come in. We three made a donation of $30 and so stated to him. I never was out there to that well before or afterwards. * * * I had $8,000 worth of property in that community."

Mr. Haubert testified, among other things:

"I know Mr. Manning. I have known him about three years. I have never had any dealings with him with reference to that oil well or lease. He never acquired any interest in it. He was not a partner of mine in any manner. I know those gentlemen, Mr. Mayfield and Mr. Allison. I did not have any other contract with them except the written contract. They were never my partners. They never agreed to pay my laborers for drilling that well. They never agreed to be my partners and to pay my bills. * * * I do not think that I saw Mr. Manning there on that lease but once."

[3] There was other testimony in contradiction of that given by appellee Key and others testifying in his behalf, but the jurors were the judges of the credibility of the witnesses and the weight to be given to the testimony, and hence all conflicts are to be resolved in appellee's favor. So considering the testimony we think the evidence supports the findings that Mayfield and Allison were partners with Haubert, and as such liable for the indebtedness declared upon by the appellee.

In Cothran v. Marmaduke, 60 Tex. 370, it is said:

"It is not essential to constitute a partnership that the parties were by agreement to share in the losses, but it is sufficient if they are to have a community of interest in the profits as such. Goode v. McCartney, 10 Tex. 195; Manhattan Brass Co. v. Sears, 45 N. Y. 797. In Story on Partnership, § 58, it is said

'that he who is to take a part of the profits shall by operation of law be made liable to losses as to third persons, because by taking a part of the profits he takes from the creditors a part of that fund which is the security for the payment of their debts.'"

See, also, Roberts v. McKinney (Tex. Civ. App.) 187 S. W. 976.

The written agreement entered into between Haubert and Allison and Mayfield at least tends to show, if it does not conclusively do so, that those three parties were interested, not only in the drilling of the well upon which appellee worked, but in the entire territory comprehended within the contract, and Allison and Mayfield manifested their interest in the development by their steady attendance and by their contribution in time and money in securing the drilling rig from Albany, in paying for the hauling, etc., as developed by the testimony. So that, on the whole, we conclude as to appellants Allison and Mayfield the judgment should be affirmed.

[4] We think, however, that the case is different as to appellant Manning. As to him we think the evidence fails to show that he had any pecuniary interest whatever in the well or in the leases involved in the controversy. He expressly denies it, and no witness contradicts him in this respect. He testified that he was never at the well but upon one occasion, and in this he is corroborated by the testimony of Mr. Haubert to the effect that he did not remember of having ever seen him there but once. It is true appellee testified definitely to his presence on one occasion, and further that he was there "occasionally," but this expression seems very indefinite and inconclusive, and, even if accepted as true, would hardly justify the conclusion that Manning had any pecuniary interest or had any contractual relation with either Haubert, Allison, or Mayfield, particularly in view of his positive testimony, which was uncontradicted, that he had no such interest. His explanation of the fact on one occasion of giving his check to appellee for $30 seems entirely reasonable in view of his large holdings in the vicinity of the well, which no witness denies.

We accordingly conclude that the judgment below should be affirmed as to appellants Allison and Mayfield, but reversed and here rendered in favor of appellant Manning.