BADGER et al. v. BOYD.

MEADOWS BROS. & ETTER v. B. R. BOYD COAL CO. et al.

Middle Section. March 11, 1933.

Rehearing denied April 25, 1933.

Petition for Certiorari denied by Supreme Court, December 9, 1933.

Mercer & Johnson, of McMinnville, for appellants B. R. Boyd and Meadows Bros. & Etter.

Turner & Haston, of McMinnville, for appellee F. H. Badger.

FAW, P. J. Two cases, as styled in the caption hereof, were consolidated and heard together in the chancery court of Warren county and have been brought to this court in one transcript.

The bill in the case of F. H. Badger et al. v. B. R. Boyd was filed on April 25, 1928, by F. H. Badger and Bob Durham against B. R. Boyd. All the parties are residents of Warren county, Tennessee.

The purpose of this bill was to obtain a specific performance of a contract for the sale of an undivided two-thirds interest in a certain tract of land, containing five hundred acres more or less, situated in Warren county, Tennessee, and which is fully described, by metes and bounds, in the bill.

It is alleged in said bill and is admitted by defendant Boyd that he (defendant Boyd) entered into a contract, in writing, with complainants Badger and Durham, on August 9, 1926, which contract is in words and figures as follows:

"McMinnville, Tennessee, Warren County,
"Aug. 9, 1926.

"This is to certify that I, B. R. Boyd, have this day sold to F. H. Badger and Bob Durham a two-thirds interest in all of my coal lands that I bought from parties known as Barnes heirs on Sink Mountain in the 6th District of Warren County, Tennessee, on the following terms and conditions.

"First: That said parties have paid me in cash ................$625.00
and agrees to furnish money promptly to pay Jenny Stepp ....  50.00
and also to pay Aquillia Barnes for his interest, when deed is
    made a price to be agreed upon ........................ 150.00
                                                            _____
                                                            $825.00

"And said parties also agrees to pay all debts that I owe at this date which has not been closely figured, but said debts will amount to less than Six Hundred Dollars.

"This Aug. 9, 1926.

"B. R. Boyd."

It is further alleged in the bill that complainant Badger had fully complied with said contract by the payment of the entire consideration stipulated therein, and complainants had called upon defendant to make and deliver to complainants a deed of conveyance of said lands, but that defendant had refused and still refuses to do so.

Complainants further allege that the land in question is mountainous and a mountain side, and is chiefly valuable for its mineral and timber; that defendant has been and is taking valuable coal from said land and selling same and taking the profits to himself; that he is threatening to impair the value of said land by cutting, removing, and selling the timber therefrom; that defendant is also threatening to convey said land so as to defeat complainants' rights therein; that defendant Boyd is wholly insolvent, and if he should convey said land or take the coal therefrom, or cut the timber thereon, complainants will be irreparably injured.

Pursuant to the prayer of the bill, a preliminary or temporary injunction was granted, issued, and served, restraining defendant from taking any coal from the boundaries of the land described in the bill and cutting any of the timber from said land and committing any other kind of waste thereon, and from incumbering or conveying said land in any manner or form.

A demurrer to the bill was overruled, with leave to the defendant to rely on the grounds of the demurrer in his answer; whereupon defendant answered and admitted that he entered into the written contract with complainants as alleged in the bill, and that complainants paid to defendant, on or about the day said contract was executed, the sum of $625, and paid, or furnished the money to pay, Jenny Stepp $50 and Aquillia Barnes $150, as provided in said written contract; but, with respect to the remainder of the consideration which complainants were to pay for said land,

as stipulated in the aforesaid written contract, defendant answered as follows:

"It is positively denied that complainant furnished respondent $586.21 to pay his debts at the time he executed said written contract or any other sum of money for that purpose in fact said contract does not provide that complainants should furnish respondent the money to pay said debts but should pay them, and in order to make it more convenient for the complainant to pay said debts, the respondent at the time said contract was made gave to complainant Badger a correct list of all said debts giving names of parties to whom due and amounts of each, copy of which list is hereinafter shown.

"It is true that complainants paid a part of two of said debts as will be hereinafter fully shown.

"In this connection respondent avers that the debts he, respondent, owed at the time the said contract was executed and contemplated by said contract aggregated the sum of $586.21, and that they were owing and due various parties and to the persons and in the amounts respectively as follows, to-wit:

| | |
|---|---:|
| McMinnville Hardware Company | $135.00 |
| C. R. Etter | 189.27 |
| Tom Faulkner | 38.82 |
| Cordell Motor Company | 10.75 |
| Hill Store | 23.00 |
| Joe Harrison | 30.00 |
| Passmore & Bouldin | 20.00 |
| Geo. McGregor | 6.50 |
| Lodge Dues | 11.50 |
| Clyde Potter | 84.37 |
| Simmons | 5.50 |
| McAfee | 7.00 |
| L. R. Turner | 7.00 |
| Frank McGee | 6.00 |
| Lester Doak | 10.75 |
| Total | $586.21 |

"That complainants only paid a part of said debts, to-wit:

| | |
|---|---:|
| C. R. Etter | $185.00 |
| Joe Harrison | 29.90 |
| Clyde Potter | 84.37 |
| | $299.27 |

"Deducting the amount of said debts so paid by complainants leaves a balance due and unpaid by complainants the sum of $286.94. That some of said debts so unpaid by complainants have in the meantime been paid by respondent out of his own private means.

"Respondent further avers that said sum of $286.94 is a part of the purchase price of said two-thirds interest in said land and is justly due and owing the respondent with interest thereon and is a vendor's equitable lien on said two-thirds interest in said land and if necessary, said interest should be sold for the payment of same.

"It may be true that complainant Badger furnished all the money

above mentioned as having been paid or furnished respondent, but this is a question to be settled between complainants and in which respondent supposes he has no interest.

"Respondent denies that complainants or complainant Badger has entirely complied with the terms of said contract, but on the contrary has, as aforesaid, violated the plain terms of said contract by not paying or furnishing the money to pay the debts owing by respondent as provided in said contract and as above set out.

"It is true that complainant Badger requested respondent to make to him another deed for said land and respondent declined to do so at the time and clearly stated to said Badger a special reason for declining; that is, that complainant had not paid nor furnished the money to pay all of respondent's debts as provided in said contract and respondent denies most positively, that complainants do not and especially complainant Badger does not know the reason why respondent declined to execute the second deed, and respondent reiterates that all of said debts have not been paid by complainant, nor money furnished to pay them."

In his answer, defendant asserted that the aforesaid written contract is "a good and valid conveyance of said two-thirds interest," but that he was "ready to make the complainant a more formal deed upon the payment to him of said $286.94, balance due respondent."

Defendant admitted that he had mined some coal from the land described in the bill, but denied that he had approporiated any part of the proceeds to his own individual use, and alleged that the profits arising therefrom had been applied to the improvement of said land and the opening and development of the mines thereon and thereunder.

Defendant denied he had threatened to sell said land or to cut and sell the timber therefrom. He admitted that the land in question is mountain land, principally valuable for its coal and timber, and alleged that it appears from the tests and excavations made that "the surface of all of said land is underlaid with three workable veins of good domestic coal."

At the final hearing before the chancellor on February 25, 1932, the defendant, by leave of the court, amended his answer by adding thereto the following, viz.:

"That the mining of coal by the defendant as above stated was done by and under an agreement entered into between complainant and defendant as partners to improve and develop said property, two-thirds interest in which the defendant sold complainant, in order that they might develop and prepare said property for a more convenient mining of coal and placing it upon the market."

The record shows that on December 7, 1931, defendant served notice on complainant that he would apply to the court on the fourth Monday in February, 1932, for leave to make the above amendment.

Defendant also filed, on the day the case was finally heard by the chancellor, an additional pleading, styled by his counsel a "plea of estoppel," through which defendant asserts that complainant (Badger) is estopped by his admissions, conduct, letters to defendant, and knowledge of all the facts, from denying any interest in, or any liability for, the costs and expenses of developing and showing up the coal in the tract of land in controversy in this cause.

Upon the issues thus made, proof was taken, and the cause was heard by the chancellor on February 25, 1932, and held under advisement until March 8, 1932, when the final decree was entered. As before stated, the case of F. H. Badger et al. v. B. R. Boyd (No. 1230 below) and the case of Meadows Bros. & Etter v. B. R. Boyd Coal Company et al. (No. 1438 below) were heard together, but a separate decree was entered in each of the two cases. The decree in case No. 1230 (F. H. Badger et al. v. B. R. Boyd) contains recitals and the chancellor's findings of fact and law, as follows:

"This cause came on to be heard before the Honorable T. L. Stewart, Chancellor, on this, the 25th day of February, 1932, when upon motion of complainants that this cause and the cause of Meadows Bros. & Etter v. B. R. Boyd Coal Company, No. 1438, pending in this Court be heard together, when it appeared to the satisfaction of the Court that the question of partnership between complainant, F. H. Badger, and defendant, B. R. Boyd, referred to in the pleadings in said cause, was a pertinent and material issue in each of the above causes, therefore, by agreement of all the parties to said cause, the Court is pleased to sustain said motion and said causes will be tried together; it is further ordered, by agreement of all said parties, that the testimony taken in either one of these causes may be read as testimony on the trial of the other in so far as it is pertinent to the issues involved therein. And cause No. 1230 above referred to was heard on this, February 25, 1932, upon the original bill, the demurrer, the answer of defendant and the answer as amended which was allowed and filed in this Court on February 25, 1932, and the plea of defendant which was allowed and filed in this Court on February 25, 1932, and the proof taken in said cause and the cause of Meadows Bros. & Etter v. B. R. Boyd Coal Company as above set out, and which cause was held under advisement until March 8, 1932, from all of which it appears to the Court that under the contract sued on in this cause, even though inartifically drawn, that the complainants paid and were to pay certain amounts of money for a two-thirds undivided interest in the land described in the bill, and that the complainants were not to obtain title to the two-thirds interest so purchased under the contract until the full purchase price set out in the contract was paid; and it being denied in the answer that the full purchase price had been paid, the Court is of the opinion and so finds from the proof that the complainants have paid

the full consideration for said land; and that the debt or account paid to John Bess of $142.50 was paid by the complainant, F. H. Badger, at the request of the defendant, upon an agreement that the defendant would accept said payment as a credit payment on the purchase price of the land in lieu of payment of defendant's personal debts as originally agreed upon; and as aforesaid that the complainants have fully paid all that was agreed to be paid for the two-thirds interest in the land so purchased.

''The Court is further of the opinion that the demurrer and plea filed in the cause are not good in law.; and they are, therefore, overruled by the Court, which is so ordered and decreed.

''The Court is, therefore, of the opinion that the complainants have paid the full purchase price for the land described in the bill, and that they are entitled to a decree vesting them with the title to the two-thirds undivided interest in said land, and that said decree may stand as a muniment of title therefor.''

It was thereupon decreed that all of the right, title, and interest of the defendant B. R. Boyd in and to a two-thirds undivided interest in the tract of land described in the bill and in said decree be and the same was divested out of defendant B. R. Boyd and vested in the complainants F. H. Badger and Bob Durham, and it was further decreed that defendant B. R. Boyd pay all the costs of the cause, for which execution was awarded.

Defendant Boyd excepted to the foregoing decree and prayed an appeal therefrom to this court, which appeal was granted by the chancellor upon the defendant executing bond or taking the oath allowed for poor persons, and he was given thirty days from March 8, 1932, in which to give bond or file the oath.

On March 19, 1932, appellant Boyd filed the oath prescribed for poor persons in lieu of bond, and on April 8, 1932, complainant moved the court to set aside the order permitting defendant Boyd to appeal on the pauper's oath. The ground of said motion, as stated therein, was that defendant Boyd "has ample property out of which to pay the cost of said appeal," and in support of the motion complainant filed affidavits to the effect that the tract of land in controversy in this case is worth at least $5,000. The chancellor overruled said motion to dispauper appellant Boyd, and no appeal from said ruling was prayed or granted.

However, in this court the appellees have filed and presented to the court a motion for a rule on appellant Boyd to execute an appeal bond as required by law, under penalty of the dismissal of his appeal upon his failure to file such bond. This motion is based on the record made in the court below, which has already been stated. The motion to dispauper appellant Boyd was properly overruled by the chancellor. Complainants alleged in their bill that defendant Boyd was insolvent. It does not appear that he has any property except an

undivided one-third interest in the tract of land in controversy in this case, and he was enjoined from selling or incumbering that until after the termination of this suit in the chancery court. Moreover, a judgment for $1,032.74 was rendered against defendant Boyd in favor of Meadows Bros. & Etter v. B. R. Boyd Coal Company et al. heard with this case, and that judgment is a lien on appellant's property in Warren county.

It is, to say the least, doubtful whether the chancellor had power to change or modify his decree after thirty days from its entry on March 8, 1932, and the motion made in the chancery court to dis-pauper the appellant was not made until April 8, 1932, which was a period of thirty-one days. Shipley v. Barnett, 161 Tenn., 437, 32 S. W. (2d), 1022. The motion to require appellant to give an appeal bond is overruled.

The bill in case No. 1438 below, styled Meadows Bros. & Etter v. B. R. Boyd Coal Company et al., was filed on March 7, 1931, by Meadows Bros. & Etter, a partnership composed of four named persons, against "B. R. Boyd Coal Company," and it is alleged that the "B. R. Boyd Coal Company is a partnership composed of B. R. Boyd and F. H. Badger, who, during the years of 1926, 1927 and 1928 were opening up and developing coal mines in the Sixth District of Warren County, Tennessee, and that they are citizens and residents of Warren County, Tennessee."

Complainant further alleges that the defendants are indebted to it in the sum of $976.65 for goods, wares, and merchandise sold to and delivered to the defendants during the years of 1926, 1927, and 1928, at the special instance and request of defendants, which sum of $976.65, with interest thereon from March 19, 1928, is justly due and owing to complainants by the defendant. An itemized statement of said account of defendants is filed as Exhibit A to the bill.

Complainant further alleges that on November 29, 1926, it erroneously gave defendant B. R. Boyd Coal Company a credit for $185, as shown on Exhibit A to the bill as follows: "Credit F. H. Badger note $185." That defendant F. H. Badger executed said note of $185 to pay on complainant's debt against defendant B. R. Boyd, and as above shown complainant credited the account of B. R. Boyd Coal Company for $185; that said credit of $185 to said B. R. Boyd Coal Company was a mistake, and erroneously given by complainant to the account of the said B. R. Boyd Coal Company; that complainant has not received anything at all from defendants for said credit, and the court should disallow said credit, as it has not worked any injury or injustice to defendants and is a credit to which defendants are not entitled.

Complainant prays for judgment against defendants for $976.65, with interest thereon from March 19, 1928, and for general relief.

On March 30, 1931, defendant Badger answered the bill of Meadows

Bros. & Etter, and denied that he is, or had ever been, a partner with B. R. Boyd, or a member of a partnership known as the B. R. Boyd Coal Company, and denied that he was ever at any time a partner with B. R. Boyd or had any connection with him with reference to the B. R. Boyd Coal Company. Defendant Badger further denied that he, as a partner or otherwise, is indebted to the complainant in the sum of $976.65, or in any amount, and he further denied that the goods, wares, and merchandise were delivered to him as alleged in the bill; and he alleges that he had nothing to do with the B. R. Boyd Coal Company and knew nothing about the goods, wares, and merchandise mentioned in the bill having been purchased from the complainant.

We quote further from the answer of defendant Badger to the bill of Meadows Bros. & Etter, as follows:

"This defendant bought a two-thirds interest in a piece of land known as the Barnes heirs land in the 5th district of Warren County, Tennessee, from B. R. Boyd, and owns a two-thirds interest in said land and is now trying in this Court to get a deed for his two-thirds interest, because of the fact that he furnished the money with which to buy said land, to the said B. R. Boyd. B. R. Boyd was at that time living on said land and before the purchase by this defendant of said real estate, the said B. R. Boyd was then operating some mines in a small way, on said land and delivering the coal from said land to the citizens of McMinnville and other parts of the county where the same could be sold, and after this defendant purchased a two-thirds interest in said land he continued to deliver said coal from said mines to the people in and around McMinnville in a small way, and continued to operate said mines in a small way, hauling coal to McMinnville and delivering it to the people, and this defendant emphatically denies that he ever had anything to do with the opening up of said mines or the hauling of coal to McMinnville or any place where the same was sold, or that he ever received a penny of pay from anybody where said coal was hauled and delivered, and absolutely had no connection in the world with the operation of said coal mines and delivering of said coal to the people where the same was sold and where the mines were operated.

"This defendant here and now alleges that this is nothing but a scheme on the part of the said B. R. Boyd and the complainants to try to hold this defendant liable on an account for which he did not authorize, and never authorized the purchase of any goods, wares and merchandise from the complainants and had nothing in the world to do with it, and this defendant now alleges that the other defendant, B. R. Boyd will never answer this bill which is filed against him and this defendant for the reason he expects and wants the complainants to recover against this defendant, because the said B. R. Boyd is wholly insolvent and this defendant is absolutely

solvent and good for any amount which judgment might be rendered against him for.

"This defendant feels that the complainants, and especially C. R. Etter knows that this defendant had nothing to do with the purchase of these goods, wares and merchandise, and that he never had the temerity or audacity to even come to this defendant and ask him for said account, when he knew this defendant was perfectly solvent and good for any amount which he claims he owes the complainants. Defendant again denies that he has any connection or had anything to do with the said B. R. Boyd Coal Company and his name was never used in connection with it. As above stated, it is a scheme on the part of the said B. R. Boyd and is inequitable and unjust. This defendant further denies that he had anything to do with the credit of $185 as shown on Exhibit A. When complainant purchased the real estate above set forth, or a two-thirds interest in same, he executed his note for $185 as part payment for said real estate, and if the note was ever sold to C. R. Etter or Meadows Bros. & Etter it was delivered and sold to them by the said B. R. Boyd and this defendant admits that he paid this note to Clyde Etter, but that he paid it as a part of the consideration he promised B. R. Boyd for the real estate and not for any indebtedness which Clyde Etter or Meadows Bros. & Etter had against him. So far as the credit alleged in the bill is concerned, this defendant has no knowledge and is not interested in it because he never owes any account which he asks to be charged back."

B. R. Boyd did not answer or otherwise make defense to the bill of Meadows Bros. & Etter, and it was taken for confessed as to him.

At the final hearing on February 25, 1932, complainants Meadows Bros. & Etter filed a "plea of estoppel" similar to that filed by defendant Boyd in case No. 1230 as before stated.

It may be remarked, parenthetically, that a "plea" filed by a complainant, especially in the absence of a cross-bill by the defendant, is somewhat a novelty in pleading, but no point is made in this court with respect to this method of pleading.

The final decree of the chancellor in cause No. 1438 was as follows:

"This cause came on to be heard before the Honorable T. L. Stewart, Chancellor, on this, the 25th day of February, 1932, when upon motion of complainant that this cause and the cause of F. H. Badger et al., v. B. R. Boyd, No. 1230 pending in this Court be heard together, when it appeared to the satisfaction of the Court that the question of partnership between F. H. Badger and B. R. Boyd referred to in the pleadings in this cause, was a pertinent and material issue in each of the above causes, therefore, by agreement of all the parties to said cause the Court is pleased to sustain said motion and said causes will be tried together; it is further ordered, by agreement of all of said parties, that the testimony taken in either one of

these cases may be read as testimony on the trial of the other, in so far as it is pertinent to the issues involved therein. And cause No. 1438 above referred to was heard on this, February 25, 1932, upon the original bill and the plea of complainant in said cause which was allowed and filed in this Court on February 25, 1932, the answer of defendant, F. H. Badger, and the pro confesso heretofore entered against B. R. Boyd, and the proof taken in said cause and the cause of F. H. Badger et al. v. B. R. Boyd as above set out, and which cause was held under advisement until March 8, 1932, from all of which the Court is of the opinion and so finds from the proof, that there was no partnership existing between the defendants, B. R. Boyd and F. H. Badger, and that the account sued on in this cause accumulated by, at the instance and for the benefit of the defendant, B. R. Boyd, who was operating under the name of B. R. Boyd Coal Company; and that the defendant, F. H. Badger, was not in any way connected therewith, and is, therefore, not liable for any portion of said debt. The Court is further of the opinion that the defendant, F. H. Badger, is not estopped from denying the existence of the partnership for any of the reasons set out in the plea of estoppel which was permitted to be filed by the Court on this date, which plea is accordingly overruled. The Court further finds that the correct amount of the account sued on in the cause is $976.65, and that the complainants are entitled to a judgment therefor, including interest from the 7th day of March, 1931, but that said judgment should only be taken against the defendant, B. R. Boyd, since the complainant failed to establish the partnership as alleged in the bill.

"The defendant, F. H. Badger, having excepted to all of the testimony of B. R. Boyd, one of the alleged partners, tending to prove the partnership, which evidence was taken and offered by the complainants in an effort to establish the existence of the partnership as alleged in the bill, the Court is of the opinion that said exception is well taken and is, therefore, sustained.

"The defendant also excepted to all testimony offered by the complainants which tended to establish the alleged partnership by reputation, and the Court being of the opinion that this exception is well taken, it is likewise sustained.

"The Court is further of the opinion and so finds that regardless of the exceptions heretofore referred to, that the complainants have not carried the burden of proof so as to justify the Court in holding that a partnership existed between the defendants.

"It is, therefore, ordered, adjudged and decreed by the Court that the complainants have and recover of the defendant, B. R. Boyd, the sum of $976.65, being the amount of the account sued on, and interest thereon from March 7, 1931, amounting to $56.12, making a total of $1032.74, for which execution may issue.

"It is further ordered, adjudged and decreed that the original

bill be dismissed in so far as the defendant, F. H. Badger, is concerned, and all cost accrued in the cause by reason of making said F. H. Badger a party defendant, is hereby adjudged against the complainants and the sureties on their cost bond, for which execution may issue.''

The decree contained certain rulings with respect to exceptions to testimony, and also provisions (by agreement) with reference to exhibits, which we need not now state.

The complainant Meadows Bros. & Etter excepted to said decree and prayed an appeal therefrom, which appeal was granted by the chancellor and perfected by the complainant.

B. R. Boyd did not appeal from the decree in case No. 1438, but he has assigned errors in case No. 1230.

Meadows Bros. & Etter has filed an assignment of errors in case No. 1438.

The determinative issue presented by appellant Boyd's assignments of error is whether or not the chancellor erred in decreeing that complainants Badger and Durham have fully paid all that they agreed to pay for the land which appellant Boyd contracted to sell to them; and in the proof this issue narrowed down to the question of whether complainants are entitled to credit on the purchase price of said land for the sum of $142.95 paid by complainant Badger to one John Bess.

The record shows, without dispute, that, at or about the time the written contract of August 9, 1926, was executed, defendant Boyd furnished to complainant Badger a list of debts owing by him (Boyd) aggregating $586.21, which debts complainants agreed to pay; that said list did not include a debt to John Bess, and defendant Boyd did not owe John Bess at that time; that on April 6, 1927, complainant Badger paid John Bess $142.95 which was due and owing to him (Bess) for work done by him, subsequent to August 9, 1926, in a coal mine on the land in controversy.

Defendant Boyd denied that complainants Badger and Durham were entitled to credit for the sum thus paid by Badger to Bess, and predicated this contention on three propositions, viz.; (1) That he and complainant Badger were devoloping and operating said coal mine as partners, and that the debt to Bess was a debt owing by said partnership and was paid by Badger as such; (2) that, irrespective of the question of partnership, complainants cannot set up a subsequent parol modification of the written contract whereby the payment to John Bess was substituted for certain debts owing by defendant Boyd (and contained in the aforesaid list of Boyd's debts) at the time of the contract of August 9, 1926; and (3) that defendant Boyd's request for, and his consent and agreement to, said payment to John Bess by Badger was obtained by duress.

The first of the three questions just stated, viz., whether or not

B. R. Boyd and F. H. Badger were partners in the development and operation of a coal mine or mines on the land in controversy, is the determinative question arising under the assignments of error filed by appellant Meadows Bros. & Etter.

There is no occasion for us to further extend this opinion by a statement of the evidence. We are of the opinion, and find, upon a careful examination of the record, that the greater weight of the proof supports the finding of the chancellor that there was no partnership between B. R. Boyd and F. H. Badger as alleged by Boyd in the amendment to his answer in case No. 1230, and/or as alleged by Meadows Bros. & Etter in their bill in case No. 1438.

The burden of proof of the existence of a partnership is upon the party alleging it. 9 Ency. of Evidence, p. 538.

Badger had no legal title to an interest in the land in question; but, passing that question and assuming that, in equity, he may be treated as a tenant in common with Boyd, "the ordinary incidents of the partnership relation whereby each partner becomes the agent of the other, with authority to manage and dispose of the firm property, and to make all contracts within the scope of the business in which the firm was designed to engage, do not arise from a joint tenancy, nor from a tenancy in common." 7 R. C. L., p. 810.

The general rule is that by the mere force of cotenancy in the ownership of mines a partnership does not arise. "Cotenants may become partners if they agree to assume that relation towards each other; but the law does not create that relation for them as the consequence of a course of conduct and dealing naturally referable to a relation already existing between them, making such a course of conduct to their common advantage." 18 R. C. L., p. 1196.

The proof in the record now before us does not show an agreement on the part of Badger to enter into a partnership relation with Boyd.

A finding of the existence of such a partnership cannot be based upon evidence of statements made by Boyd to Meadows Bros. & Etter in the absence of Badger. "The necessary foundation to charge one partner with the admission of another is proof of the partnership. It is very clear that before one partner can be charged with the admission of another, the partnership relation must be shown—and that by other evidence than the admission itself. . . . The admission, per se, can be received only to affect the person making it. It becomes admissible against the partnership as such, or against other partners, only upon such proof of the relationship as makes plain the probative connection." 2 Jones on Evidence (2 Ed.), section 935, pp. 1726, 1727.

Nor do we think there is a sufficient basis in the record for holding Badger liable to Meadows Bros. & Etter as a "partner by estoppel" under the Tennessee Uniform Partnership Act of 1917, chapter 140,

section 16, as in the case of Mosley v. Robert Orr & Co., 6 Tenn. App., 243, 246.

Of course, as between Badger and Boyd, Badger, cannot be held as a "partner by estoppel."

Passing now to Boyd's contention that Badger and Durham cannot rely upon a subsequent parol modification of the written contract of August 9, 1926, by which parol agreement the payment of $142.95 to John Bess was substituted for certain debts owing by complainant Boyd at the time of the execution of said written contract, we find that, after his execution of the written contract of August 9, 1926, Boyd continued to mine coal in a small way on the land in question (operating a so-called "wagon mine"), and, in the prosecution of said mining operations, incurred an indebtedness of $142.95 to one John Bess; that Bess became very insistent upon payment, and, a few days before April 6, 1927, Boyd and Bess went together to the place of business of F. H. Badger, in McMinnville, and requested Badger to advance the money to pay Bess's claim of $142.95, which Badger agreed to do, provided Bess would allow him ten days' time to make said payment, and Boyd would agree that such payment to Bess should got as a credit on the consideration named in the contract of August 9, 1926, in lieu of an equivalent amount of the debts of Boyd which Badger and Durham had agreed to pay. Both Bess and Boyd agreed to the conditions just stated, and in due time Badger paid said sum of $142.95 to Bess.

It was competent for the parties to thus change and modify their written contract by a subsequent oral agreement. "The general rule against the admissibility of parol evidence to vary a writing does not prevent proof of the existence of any distinct, subsequent, oral agreement to rescind or modify any such contract, grant or disposition of property provided that such agreement is not invalid under the statute of frauds or otherwise." 3 Jones on Evidence (2 Ed.) section 1500, p. 2736. See, also, Bryan v. Hunt, 4 Sneed, 543, 546, 70 Am. Dec. 262.

The subsequent oral agreement here involved was not invalid under the statute of frauds, for it related only to the consideration which Badger and Durham were obligated to pay to Boyd; and Boyd was "the party to be charged" under the statute of frauds (Code 1932, sec. 7831). Whitby v. Whitby, 4 Sneed, 473, 478; Lusky v. Keiser, 128 Tenn., 705, 164 S. W., 777, L. R. A., 1916C, 400.

It is claimed on behalf of Boyd in this court that Boyd's agreement that Badger's payment to Bess should go as a payment on the land in lieu of an equivalent amount of Boyd's personal debts stipulated in the written contract was obtained by duress, and was, therefore, not binding on him.

Bess testified that Boyd gave him a check which was "turned

down" by the bank, and he thereupon found Boyd and "told him three things, pay me, kill me, or —— I would kill him."

In his testimony, Boyd denied that Bess threatened his life as Bess testified, but (passing the question as to whether Boyd can rely upon threats which he says were never made) we do not think there is any merit in Boyd's claim of duress, for it does not appear that Badger knew that Bess had made such dire threats against the life of Boyd, although Badger states that Boyd seemed somewhat excited when he and Bess came to his (Badger's) place of business at the time the oral agreement in question was made.

Moreover, Badger did not pay Bess for several days after the agreement was made, and there is no intimation in the record that Boyd notified Badger in the interim that the agreement was made under duress.

In case No. 1230, appellant Boyd says the chancery court erred in not dissolving the injunction.

The injunction granted was merely a temporary or interlocutory injunction, and it was not perpetuated by the final decree—in fact, the injunction is not mentioned in the final decree. This was equivalent to a disolution of the temporary injunction. "An interlocutory injunction is superseded by the decree made at the hearing of the cause, and, if such injunction is intended to remain in force, it must be properly continued by the final decree." Gibson's Suits in Chy. (3 Ed.), section 837.

Appellant Boyd says further that the court erred in not "disposing of the coal." So far as we have discovered, the record does not show that the chancellor was at any time requested, by pleading or otherwise, to "dispose of the coal."

Appellant Boyd also says that "the Court erred in not allowing defendant a reasonable salary and referring same to the Clerk & Master for proof."

No issue was made by the pleadings which would have justified a recovery of "salary" by appellant Boyd in this case.

Appellant Meadows Bros. & Etter assigns as error that "the Court erred in sustaining the exceptions of F. H. Badger to the testimony of B. R. Boyd tending to prove the partnership or establish the existence of the partnership."

This latter assignment wholly fails to conform to the published rules of this court and the Supreme Court governing assignments of error, which provide that, "when the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found." See Appendix to 155 Tenn., pp. v and xii.

It results that all of the assignments of error of the appellants are overruled and the decree in each of the two cases, in so far as they

have been brought up by the appeals of B. R. Boyd and Meadows Bros. & Etter, respectively, are affirmed.

One-half the costs of the appeal will be adjudged against appellant Meadows Bros. & Etter and the sureties on their appeal bond, and the remaining one-half the costs of the appeal will be adjudged against appellant B. R. Boyd.

Crownover and DeWitt, JJ., concur.

### On Petitions for Rehearing.

FAW, P. J. An opinion was handed down and a decree entered on a former day of the present term affirming the decrees of the chancery court in the above-styled consolidated cases.

The decrees thus affirmed were adverse to the appellants B. R. Boyd and Meadows Bros. & Etter, and each of these two appellants has filed a separate petition for a rehearing.

Each of these petitions is of considerable length and consists of a reargument of propositions presented by the assignments of error, briefs and written arguments of counsel, and, in part, by oral argument at the bar, and to all of which the court gave attention in the consideration and decision of the case. We have not found anything in either of these petitions to rehear that was overlooked in our former examination of the record and consideration of the case.

The fact that the testimony of each witness and each item of evidence are not mentioned and discussed in the written findings and opinion filed does not mean that the court has overlooked such testimony or such item of evidence. The findings of fact which this court is required to file in chancery cases is a written statement of our conclusions with respect to the determinative facts in issue in each case.

"A petition for rehearing should never be used merely for the purpose of rearguing the case on points already considered and determined, unless some new and decisive authority has been discovered, which was overlooked by the court. The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those things which the counsel supposes were improperly decided after full consideration." Louisville & N. Railroad Co. v. U. S. Fidelity & Guaranty Co., 125 Tenn., 658, 691, 148 S. W., 671, 680.

The petitions for a rehearing are denied and dismissed, at the cost of the respective petitioners.

Crownover and DeWitt, JJ., concur.