## COX et al. v. BOND et al.
### No. 4530.

Court of Civil Appeals of Texas. Amarillo.

Feb. 3, 1936.

Rehearing Denied March 2, 1936.

Wilkinson & Wilkinson, of Brownwood, and J. L. Alford, of Rising Star, for appellants.

Callaway & Callaway, of Brownwood, for appellees.

MARTIN, Justice.

On January 11, 1933, F. N. Campbell was the owner of an oil and gas lease on fifty acres of land in Brown county, Tex., and on January 26, 1933, made a contract with appellees, Bond and Jones, to drill an oil well thereon. On February 22, 1933, Campbell entered into what is called an "operating agreement" with E. F. Johnson respecting said property, and thereafter an undivided one-half interest in said oil and gas lease was assigned by Campbell to Johnson. At various dates, divers and sundry parties acquired fractional undivided interests in said lease. About July, 1933, Johnson appointed C. R. Cox his assistant manager. The oil well was completed by appellees to the required depth, and it became necessary to make a contract to do further work thereon, which furnishes the basis for the present controversy.

Appellees sued Campbell, Johnson, Cox, and about thirty-one other defendants (all nonresidents of Texas and assignees of interests in said gas and oil lease), upon the last-mentioned contract, concerning which they alleged in part:

"That on or about said date the defendants C. R. Cox, F. M. Campbell and E. F. Johnson, acting for themselves and as the duly authorized agents and representatives of all said defendants, made a verbal

contract with the plaintiffs as follows: The defendants, by said contract, employed these plaintiffs to furnish their said machinery, tools, etc., and operate the same under the direction of defendants for cleaning out, under reaming, swabing and otherwise working on said well, furnishing all labor and such tools as the plaintiffs had at that time. * * *

"Plaintiffs further allege that the defendants and all and each of them were partners in the ownership and operation of said lease, and as such partners are jointly and severally reliable to these plaintiffs for the amount sued for herein. But should the court for any reason hold that under the law and the facts herein alleged and the evidence to be produced on the trial hereof, that the defendants are not generally partners, then plaintiffs say that they are special partners or mining partners in the operation of this lease, and are jointly interested in a joint venture, and that all of the work and services performed for said parties were necessary and proper for the operation of said lease and the completion of said joint venture, and that the said defendants and all and each of them, are due and owing these plaintiffs the amount sued for herein."

Many issues were submitted to and answered by the jury upon matters that have passed out of the case. Upon these, and an implied court finding, judgment was entered for appellees against Cox and Campbell personally and jointly and severally for the sum of $1,645.12. Such was established as an indebtedness against the remaining nonresident defendants and an attachment lien foreclosed against certain property alleged to belong to the partnership composed of all defendants in the suit.

The disposition we make of the appeal makes it unnecessary to discuss any question other than the sufficiency of the evidence to sustain the appellees' allegations of a partnership, quoted in part above.

■ We construe the appellees' suit as one against a partnership. Being sued as a partner, the liability of each depends on proof of the existence of such relationship. Texas Land & Cattle Co. v. Molina (Tex. Civ.App.) 258 S.W. 216, 217; Baptist Book Concern v. Carswell (Tex.Civ.App.) 46 S. W. 858.

■ Of the many sued, it is sufficient here to say that we are of the opinion that as to a larger number of these, perhaps more than a majority, we find no evidence whatever of any probative force of their legal connection with the alleged partnership. The evidence perhaps sufficiently shows that a partnership existed, but we have looked in vain for evidence of the identity of its membership. The statement of facts is complicated, filled page after page with the usual bickering of counsel. We have been compelled to rely upon the evidence quoted in appellees' brief. We reproduce here literally a part of what is considered by us as the strongest and as typical of that relied on to show such relationship:

"The witness G. I. Jones, one of the plaintiffs, testified:

"Q. During the time from the time you set the 6-⅝ inch casing until you got that well on the pump, or until you quit working there, how many of these North Dakota boys, and Missouri boys, were down there? A. From time to time there must have been 25 or 30 of them there at different times.

"Q. Twenty-five or thirty of them? A. Yes, sir.

"Q. State if they talked with you about the progress of the well and what was being done? A. Yes, sir, they talked with me about it, and how we were getting along.

"Q. State who was in charge of it, and who you were to take orders from? A. The way they all talked we were supposed to take orders from Cox, Johnson and Campbell.

"Q. What did they tell you about who you was to take orders from? A. From the conversation I had with them, they told me to take my orders from whatever Cox and Johnson said was the proper thing to do.

"Q. Did any of the rest of them undertake to take charge of the job or give orders on the job? Or did they permit Cox and Johnson to go ahead and do all of the bossing? A. Yes, sir. None of the others ever attempted to tell us anything to do." (Pages 158, 159 SF.)

The defendant Johnson testified in part:

"Q. Who else was there representing interests in this oil lease? A. There were about eleven from South Dakota.

"Q. Are any of these present now besides yourself? A. Yes, sir, two of them, Thursdale and Anderson. * * * These

men from Dakota had cash and cashier's checks and I carried them to the bank.

"Q. They had brought that with them? A. Yes, they had brought that with them and they gave me their checks in the hotel that night that they pulled the nipple off. * * *

"Q. About how many of you came down on that trip? A. I should say that there were twelve or fifteen of us.

"Q. State whether on that trip you brought the money to pay for the rest of the drilling? A. Yes, sir, we all had money with us.

"Q. Do you know how much you brought for that purpose? A. We brought around $2500.00 to $3,000.00. I do not know exactly what it was."

It is not even alleged that any of the defendants sued resided either in North Dakota or Missouri. What were their names, and what connection did they have with this enterprise? Campbell alone owned the original lease, and he alone as owner made the original drilling contract. It is not shown that any except three of the parties sued ever knew of or was connected with the "operating agreement." They were owners, it is true, of an interest in the Campbell lease. The mere ownership of an undivided interest in an oil and gas lease does not of itself and alone create a partnership, mining or otherwise. Then, too, the interest in the matter of whoever came to Texas may have been referable to their ownership as cotenants of the oil and gas lease. Much of their conduct can be thus explained. We quote here some well-settled legal principles which seem to be applicable to the present situation:

"In order to constitute a mining partnership (sometimes called a joint venture) there must be not only a joint ownership of the mining property (which of itself creates only the relation of co-tenancy), but also a joint operation. 'The actual working of the mine by the joint owners is essential to a mining partnership.' 22 A. & E. Ency. of Law, p. 228. This rule is so well established as to be now regarded as elementary (40 C.J. p. 1145; 18 R.C. L. p. 1200, § 106; 2 Thornton's Oil & Gas (5th Ed.) §§ 658-667; Summer's Oil & Gas, § 235), and has been followed in this state whenever the question has been presented. Bolding v. Camp (Tex.Com. App.) 6 S.W.(2d) 94; Leath v. Benton Abstract & Title Co. (Tex.Civ.App.) 9 S.W.

(2d) 501; Lowry Oil Corp. v. Bennett (Tex.Civ.App.) 16 S.W.(2d) 947; Ferguson v. Rhoades Drilling Co. (Tex.Civ. App.) 271 S.W. 155; Adams v. Texhoma O. & R. Co. (Tex.Civ.App.) 262 S.W. 139.

"The Texas cases in which it has been held that a mining partnership existed presented the elements 'not only a joint ownership of the lease * * * but joint operation, sharing of profits, community of interests, and the mutual agency * * * in the management of the lease and exploration for oil.' Wagner Supply Co. v. Bateman, 118 Tex. [498] 499, 18 S.W.(2d) 1052, 1055; Munsey v. Mills & Garitty, 115 Tex. 469, 283 S.W. 754; Mayfield v. Key (Tex.Civ.App.) 260 S.W. 926; Indiahoma Ref. Co. v. Wood (Tex.Civ.App.) 255 S. W. 212." Gardner v. Wesner (Tex.Civ. App.) 55 S.W.(2d) 1104, 1106 (writ refused).

"The burden of proof of the existence of a partnership is upon the party alleging it. Ency. of Evidence, vol. 9, p. 538. * * *

"The general rule is that by the mere force of cotenancy in the ownership of mines a partnership does not arise. 'Cotenants may become partners if they agree to assume that relation towards each other; but the law does not create that relation for them as the consequence of a course of conduct and dealing naturally referable to a relation already existing between them, making such a course of conduct to their common advantage.' 18 R.C. L. p. 1196. * * *

" 'The necessary foundation to charge one partner with the admission of another is proof of the partnership. It is very clear that before one partner can be charged with the admission of another, the partnership relation must be shown—and that by other evidence than the admission itself. * * * The admission, per se, can be received only to affect the person making it. It becomes admissible against the partnership as such, or against other partners, only upon such proof of the relationship as makes plain the probative connection.' Jones on Evidence (2d Ed.) vol. 2, § 935, pp. 1726, 1727." Badger v. Boyd, 16 Tenn.App. 629, 65 S.W.(2d) 601, 608.

We have been cited to no evidence which shows that the "North Dakota and Missouri boys" ever owned an interest in the lease. The names of those sued by appellees, and the assignees of undivided inter-

ests in the Campbell oil and gas lease, appear approximately identical. When we look for evidence that such persons were actually connected with the alleged partnership enterprise further than as co-owners of the lease, we fail to find it, except as to a few, and as to these the evidence is meagerly sufficient, if at all, to meet the demands of the rule quoted above. Judgment foreclosing an attachment lien on their property in Texas appears to have been taken, admittedly because of an alleged partnership relation with Campbell et al. Surely more specific evidence of identity is available than we have quoted. There is no possible way for appellants to meet evidence of the general character set out above.

We will not turn aside to discuss questions which may be purely academic on another trial.

Because the case has not apparently been fully developed, we decline to reverse and render as insisted on by appellants. The ends of justice will be better served by reversing and remanding this case for another trial, and it is accordingly so ordered..

Reversed and remanded.