er or not the facts showed a specific intent to kill.

The entire record has been again examined in the light of appellant's contention. We remain convinced that reversible error is not reflected.

The motion for rehearing is overruled.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## SMITH v. RAMPY et al.
### No. 5754.

Court of Civil Appeals of Texas. Amarillo.
Dec. 2, 1946.

Rehearing Denied Jan. 6, 1947.

Thomas B. Duggan, Jr., of Lubbock, and McGown, McGown, Godfrey & Logan, of Fort Worth, for appellant.

Herbert · Marshall, of Dallas, J. Orville Smith, Nelson, McCleskey & Howard, and F. D. Brown, all of Lubbock, Allison & Chandler, of Levelland, and Bryan, Stone, Wade & Agerton, of Fort Worth, for appellees.

STOKES, Justice.

On October 18, 1944, appellee L. R. Rampy executed and delivered to Frank Griggs as lessee two oil and gas mining leases covering approximately 222 acres of land in Cochran County. At the same time, Rampy and Griggs entered into a development contract concerning the character of drilling operations and development of the leases that would be prosecuted by Griggs, including the drilling of a well to a depth of 5000 feet unless oil or gas in paying quantities were discovered at a lesser depth, and if oil or gas were produced, the development of the leases to the extent permitted by law. On May 4, 1945, appellee Rampy instituted this suit in which he asserted an action for damages by reason of the alleged breach of the development contract. He also pleaded an action in trespass and to remove cloud from his title to the 222 acres, and an action for damages to the land, which he alleged had accrued from the loss of rentals and revenue. The petition named appellant O. R. Smith and fifteen other parties and corporations, not necessary here to identify, as defendants. He alleged that Smith was a mining partner with Griggs in the development of the leases and that the other defendants held mechanic's and materialman's liens and deeds of trust against the property. He prayed for cancellation of the development contract and the oil and gas leases; that they be removed as clouds upon his title; and that he recover damages for loss of rents and profits. The defendant lienholders answered by the general issue and, by cross-action, sought to recover from Griggs and appellant Smith the debts evidenced by the respective liens held by them under allegations that appellant Smith was a mining partner with Griggs in the drilling of two wells in an effort to produce oil or gas from the land covered by the leases. Appellant Smith filed pleas of privilege as to Rampy's cause of action and also as to each cause of action asserted by the respective cross-plaintiffs, alleging his residence to be in Ector County and praying that the cause of action as against him be transferred to the District Court of that county. Controverting affidavits were filed to each plea of privilege. At a hearing involving the issues presented by the pleas of privilege and the controverting affidavits, it was stipulated that if the pleas of privilege were sustained as to Rampy's cause of action, the order of the court transferring Rampy's cause of action against Smith should include the transfer of each cross-action of the other appellees. The issues relating to

the pleas of privilege were submitted to the court without the intervention of a jury and resulted in a judgment overruling the pleas of privilege upon the theories, (1) that after the execution of the oil and gas leases by Rampy, appellant Smith and Frank Griggs undertook the drilling of wells thereon in such manner as to constitute them joint adventurers or mining partners in the development of the leases under the development contract executed by Griggs, which provided that it should be performable in Cochran County, and that, although Smith had not signed the development contract, being a mining partner with Griggs, he was a necessary party to the suit; (2) that the suit was for the recovery of land or damages to land and to remove encumbrances upon the title and venue was, therefore, properly laid in Cochran County. The holdings were based upon the provisions of Subdivisions Numbers 5, 12, 14 and 29a of Article 1995, Vernon's Revised Civil Statutes.

The appellant O. R. Smith duly excepted to the judgment, perfected an appeal to this court and presents the case here upon four assignments of error, in which he contends the judgment should be reversed first, because the court erred in overruling his pleas of privilege, for the reason that the evidence wholly failed to establish a mining partnership between Griggs and appellant; secondly, because appellee Rampy's petition failed to show a cause of action in trespass to try title or to remove encumbrances and clouds from title insofar as appellant was concerned and, thirdly, because the cause of action asserted by appellee Rampy for lost rents and profits by reason of being excluded from the land was not an action for damages to land within the meaning of Subdivision 14, Article 1995.

It is well settled by many decisions of the courts of this State that a mining partnership, sometimes referred to as a joint adventure, may be created by express contract and it may also be created as a matter of law, without an express contract, by the joint ownership and joint operation of the enterprise. In order to create a mining partnership by the latter method, there must be present the elements of joint ownership, joint operation, the sharing of profits, community of interests and mutual agency in the management of the lease or properties involved. Gardner v. Wesner, Tex.Civ.App., 55 S.W.2d 1104; Wright v. Terry, Tex.Civ.App., 78 S.W.2d 1043; Clayton v. Bridgeport Mach. Co., Tex.Civ. App., 33 S.W.2d 787; Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052; Roberts v. McKinney, Tex.Civ.App., 187 S. W. 976; Mayfield v. Key, Tex.Civ.App., 260 S.W. 926; Templeton v. Wolverton, et al., 142 Tex. 422, 179 S.W.2d 252.

Appellees do not challenge the proposition we have posed but they contend, first, that the finding by the trial court of the existence of a mining partnership between Griggs and Smith was supported by the evidence to the effect that they were joint owners and jointly operated the leases; secondly, that the suit was one of trespass to try title and to remove clouds and encumbrances from the title to land; and, thirdly, that Griggs was sued upon a written contract performable in Cochran County pertaining to land upon which the lien-holding appellees sought to foreclose liens and that appellant, being a necessary party thereto, venue was properly laid against him in Cochran County.

The record shows that on the 4th of November, 1944, Griggs desired to begin the drilling of a well on the land in an effort to produce oil or gas but that he was not possessed of sufficient funds and he procured appellant Smith to accompany him to the First National Bank of Fort Worth, where he contemplated borrowing enough money to discharge the expenses of drilling the first well. The negotiations resulted in the bank advancing to Griggs the sum of $30,000 upon Griggs' note, signed by appellant as surety. A deed of trust covering the leases was drawn in the bank at that time and executed by Griggs, whereby he secured appellant upon his surety obligation. An official of the bank advised Smith to take from Griggs an assignment of the leases as additional security for his suretyship but Griggs and Smith repaired to Smith's office, where they discussed the matter further, and Griggs then executed an assignment to Smith of an undivided one-half interest in the leases. It is undis-

puted that this assignment was executed as additional security for Smith's obligation upon Griggs' note at the bank. On the same day, Griggs and appellant entered into a written contract under which it was provided that Griggs, at his own expense and without any responsibility or expense of appellant, should proceed at once to drill a well upon the Rampy leases and complete the same to the depth of 5,000 feet or to paying production, as provided by Griggs' development contract with Rampy. It further provided that, if and when Griggs had done so, appellant would then pay to Griggs $15,000 and receive therefor an assignment of an undivided half interest in the leases. The record further shows that, before the execution of the last mentioned contract, Griggs had attempted to induce appellant to pay $15,000 upon the drilling expenses of the first well, which appellant declined to do. It is further shown that Griggs then made all necessary arrangements and proceeded with the drilling of the first well on the Rampy leases and it was in the drilling thereof that he incurred practically all of the indebtedness represented by the various liens of the other appellees herein. On January 8, 1945, a showing of oil was encountered in the well and Griggs telephoned to Smith at Fort Worth, suggesting that Smith come to the leases at once if he wished to see an oil well brought in. Pursuant to the conversation, appellant and his wife immediately proceeded to the leases and all of the parties, especially appellant, became somewhat excited over the prospect of bringing in an oil well. Immediately after appellant's arrival, a core was taken from the well which indicated the presence of oil therein and appellant became very active in assisting those in charge of the operation. He held numerous conversations with the geologist who was supervising the taking of the core; he told Griggs to get some pipe ordered in order to facilitate the operation; he said to his wife "We have an oil well"; he talked at length with Griggs about purchasing Griggs' interest; made the statement that, since he had put his money into the well he ought to be permitted to examine the core; was at the well seven or eight times during the ten day period when it was being acid-ized the first time; instructed the engineer to "pick up a water sample and run an analysis to see whether it was formation or acid water"; during the swabbing, appellant and Griggs paid two members of the crew $25 each to remain on the job all night; he complained about the delay in deepening the well and did a number of other similar acts, all of which appellees contend were sufficient to establish their allegations that appellant was a mining partner in the development of the leases.

There is no testimony that appellant made any visits to the well before January 8, 1945, when a showing of oil was encountered. The testimony shows that his visit to the well on that date was the first time he had been there. He had a contract with Griggs, the owner of the leases, under which he was entitled to a half interest in them by paying the sum of $15,000 if and when the well was drilled to its contract depth of 5,000 feet or when oil or gas in paying quantities was developed. The things which appellant did and the acts performed by him were all performed after a showing of oil had been encountered and, in our opinion, they were accounted for by the interest, excitement and anticipations which would naturally follow the appearance of strong evidence that a new oil field and its consequent wealth were about to materialize. Bolding v. Camp, Tex.Civ. App., 6 S.W.2d 94; Leath v. Benton Abst. & T. Co., Tex.Civ.App., 9 S.W.2d 501.

The contract entered into between appellant and Griggs on November 4, 1944, specifically provided that Griggs should drill the well at his own cost and expense and that he would furnish all of the materials, labor, transportation, casing, tubing, rods and all other necessary equipment and materials for the proper drilling thereof. On January 8, 1945, appellant went to the well only because he and all of the others interested believed oil had been discovered in paying quantities, and all of the acts performed by appellant were designed to hasten the bringing in of the well rather than to contribute to its drilling. These acts and the things done by appellant at that time, being the only acts performed by appellant in the drilling and completion of the

well, were, in our opinion, not sufficient to establish the element of joint operation which is necessary to constitute him a joint adventurer in the drilling of the well. If, however, they could be so considered, standing alone, they were not sufficient to constitute a mining partnership between appellant and Griggs, because joint ownership is also a necessary element of such a relationship.

■ The only evidence of joint ownership, or of appellant's connection with the title to the leases, is the assignment executed by Griggs on November 4, 1944, whereby he assigned to appellant an undivided one-half interest in them, and the contract executed on the same day by Griggs and Smith under which appellant acquired the right to purchase from Griggs an undivided one-half interest in the leases for the sum of $15,000 "if and when second party (Griggs) has completed first test well on said above described tracts of land or upon his completing his contract with said L. R. Rampy." The contract which Griggs had made with Rampy obligated Griggs to drill the well to a depth of 5,000 feet or to a depth at which oil or gas would be produced in paying quantities. Neither of these conditions was complied with by Griggs. The well was drilled to a depth of only 4873 feet and it did not produce oil or gas in paying quantities at any depth. The condition upon which appellant would or could acquire an undivided one-half interest or any interest whatever in the leases never having been complied with and no other conveyance or assignment having been made to him, appellant never at any time became possessed of any interest whatever in the leases. He held only liens upon them under the deed of trust and assignment of November 4, 1944. The mere fact that he made it possible for Griggs to borrow from the bank funds to be used in drilling the well gave him no present interest, and admitting, therefore, for the purpose of the discussion, that he engaged in the operations of drilling the well, the necessary element of ownership is wholly lacking. It seems clear, therefore, that, insofar as appellant's being a mining partner or joint adventurer in the enterprise with Griggs is concerned, the court below was in error in overruling appellant's pleas of privilege. Gardner v. Wesner, Tex.Civ.App., 55 S.W. 2d 1104; Morris Plan Bank of Ft. Worth v. Ogden, Tex.Civ.App., 144 S.W.2d 998; Leath v. Benton Abstract & T. Co. supra; Seifert v. Brown, Tex.Civ.App., 53 S.W.2d 117; Bolding v. Camp, supra.

■ Appellees contend, however, that the suit was one of trespass to try title and to remove cloud from the title and that venue as to appellant was, therefore, properly laid in Cochran County, under the provisions of Subdivision 14 of Article 1995, R. C. S. In his first amended original petition, the pleading upon which the issues were tried, and which was made a part of his controverting affidavit, appellee Rampy pleaded a cause of trespass to try title in the conventional form, alleging that on May 1, 1945, the defendants and each of them unlawfully entered upon his land and ejected him therefrom. He also alleged the execution of the oil and gas mining leases to Frank Griggs; that appellant was in fact a partner in the transaction; that appellant participated with Griggs in the negotiations for the leases; entered into a contract with Griggs whereby appellant assumed the obligations imposed upon Griggs; and that Griggs assigned to appellant an undivided one-half interest in the contract and leases; and that appellant and Griggs, as partners, commenced the drilling of the first well and prosecuted the same to a total depth of 4873 feet. However, he further alleged that, on the 16th day of February, 1945, appellant and Griggs undertook to dissolve their partnership and on that date appellant executed assignments whereby he transferred and assigned to the defendant, Frank Griggs, all of his interest in and to the contract and the wells. He alleged that thereafter, on numerous occasions, when plaintiff demanded of him that he carry out the contract according to its terms and complete the wells, appellant informed him that appellant had sold out to Griggs. Morever, it was shown, without dispute, that on February 16, 1945, appellant and Griggs entered into a contract, in the pre-

amble of which they recited the transaction of October 18, 1944, between appellee Rampy and Griggs under which Griggs procured the leases; the assignment to Smith of an undivided one-half interest therein on November 4, 1944; the development contract between Griggs and appellee Rampy; the contract of November 4, 1944, between appellant and Griggs whereby appellant agreed to purchase an undivided one-half interest in the leases and pay therefor the sum of $15,000 if and when Griggs complied with the development contract; the deed of trust of November 4, 1944, by which Griggs secured appellant for his suretyship on the $30,000 note; the contemplated partnership that would be formed between them after the completion of the first well; and that appellant had, on that day, assigned and transferred to Griggs, and Griggs had purchased from appellant, his undivided one-half interest in and to the oil and gas leases. The contract further recited Griggs' ownership of 208.4 shares of the capital stock of Dalby Motor Freight Lines, Inc. and provided that this capital stock would be assigned to appellant in consideration of his paying the $30,000 note and certain other indebtedness owed by Griggs. Appellant testified without dispute that the provision of this latter contract obligating him to assign to Griggs all of his interest in the leases had been complied with and that the assignment was executed. As alleged by appellee Rampy, this transaction took place more than two and one-half months prior to May 1, 1945, the date he alleged he had been dispossessed of the land. In the first place, appellee Rampy was bound by his own pleading to the effect that appellant had parted with all of his interest in the leases prior to the time the suit was filed, and in the second place, the testimony showed conclusively that he had done so. Rampy's right to the relief for which he prayed under his trespass to try title suit had, therefore, become moot as to appellant before the suit was filed and its determination by the court was not necessary. We are, therefore, not in accord with appellees in their contention that venue was properly laid under the trespass to try title feature of the case. Morris Plan Bank of Ft. Worth v. Ogden, supra.

■ The next ground upon which appellees seek to hold venue in Cochran County as to appellant is that venue was properly laid in that county as to all of the other defendants; that Griggs was sued upon a written contract performable in Cochran County; that the other defendants were seeking to foreclose liens upon land situated in Cochran County; and appellant being a necessary party to the suit and cross-actions, venue was properly laid in Cochran County as to him by virtue of the provisions of Subdivision 29a of Article 1995, R. C. S. The only ground upon which appellees seek under this contention to hold appellant is their contention that a mining partnership existed between him and Griggs. Unless appellant was a mining partner, he was not a necessary party to the suit, because it was only through such a partnership that he could have owned an interest in the land and we have already held that, according to the testimony, no such partnership existed. Likewise, their contention that venue of appellant was properly laid because the suit was to remove cloud from the title to land is without merit because, as we have already shown, appellant not only never acquired any interest in the land but had divested himself of any apparent or possible interest he might have owned therein long before the suit was filed.

■ ■ Insofar as that portion of the petition which sought to recover rents or profits from, or damages to the land is concerned, no facts were alleged which revealed such items, as required by Article 7366, R. C. S., and the rule is well established that general allegations of damages caused by wrongful ejectment from, and withholding of possession of, the premises will not support a recovery for injury or damage to land. No injury or damage to the land was shown and the allegations to the effect that the plaintiff had lost certain rental values which he might have procured from others but was unable to do so because of the possession and injury of the property by appellant and Griggs were wholly insufficient to present a case of injury and damage to the estate. Knight v. Houston & T. C. R. Co., 93 Tex. 417, 55 S.W. 558;

City of Mineral Wells v. McDonald, 141 Tex. 113, 170 S.W.2d 466.

We have carefully considered all of the contentions presented by the able briefs of counsel and have also carefully examined the voluminous record presented and, in our opinion, the judgment of the court below denying appellant the privilege of being sued in the county of his residence was without evidence to support it. World Co. v. Dow, 116 Tex. 146, 287 S.W. 241. Since the appeal was from the order of the court overruling appellant's pleas of privilege and, therefore, the question of venue only is presented here, the judgment will be reversed and the cause remanded to the trial court with instructions to sustain appellant's pleas of privilege and order the case, as to appellant O. R. Smith, removed to the District Court of Ector County.