## McADAMS et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 13560.

United States Court of Appeals
Fifth Circuit.

June 24, 1952.

Rives, Circuit Judge, dissented.

Prentice Wilson, Allen Wight, Dallas, Tex., for petitioners.

S. Dee Hanson, Ellis N. Slack, Robert N. Anderson, Sp. Assts. to Atty. Gen. Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

The Commissioner determined and the Tax Court held that petitioners were not entitled to deduct in taxable years 1944 and 1945 moneys repaid their co-owner in those years in reimbursement of their pro rata shares of drilling and development expenses incurred and paid for them by Luse, their co-owner in 1941.

Taxpayers, aggrieved by the decision,[1] petitioned for review, and are here insisting that what occurred in 1941 was not a payment by their co-owner, the brother and brother-in-law of taxpayers, of the whole of the debt on his and their account, but a payment by the co-owner of his part of the debt and a purchase from the creditor of taxpayers' part of it, with a subrogation of the co-owner to the creditor's position against the taxpayers as to their part of the debt.

The theory thus advanced is, in our opinion, fanciful and unreal, and wholly without support in the record which shows plainly: that the taxpayers, with the assistance of Luse, borrowed from the banks in 1941 all the money they could borrow and paid this to Luse for payment on the obligations; that they took a deduction for these borrowed moneys in that year; and that, while they did not borrow the balance from the banks, they did, in fact, borrow it from Luse, who paid the obligation in full, both for himself and for the taxpayers in 1941.

There is no evidence, whatever, that Luse purchased any part of the obligation from the creditor. The evidence, on the contrary, is that the obligations to the driller were fully discharged by Luse in 1941, and, while the record is silent as to Luse's tax treatment of his share of these costs, it does show that the taxpayers deducted as drilling and development costs, that is as expenses, in that year, the amount they had borrowed from the bank to pay and had paid Luse.

Finding ourselves, therefore, in full agreement with the opinion and decisions of the Tax Court, we deny the petition for review and order the judgments affirmed.

RIVES, Circuit Judge (dissenting).

As posed by the Tax Court,

"The sole question is whether the petioners are entitled to deductions of $21,500 in 1944 and $2,225.59 in 1945 for amounts expended in those years to reimburse a co-owner of oil leases for expenditures made by him in 1941 in connection with the drilling and development of oil wells."

The petitioners made income tax returns on a cash basis. On the authority of Helvering v. Price, 309 U.S. 409, 60 S.Ct. 673, 84 L.Ed. 836; Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911, and P. G. Lake, Inc., v. Commissioner, 5 Cir., 148 F.2d 898, they insist that they have a right to have the deductions allowed during the taxable years in which they paid the expenses. The respondent, in reply, makes several contentions. (1) Deduction in later years would have distorted the true income both for 1941 and for subsequent years. (2) Under the Regulations, the taxpayer had to elect to charge the expenses in question to capital or currently deduct them from income upon completion of the oil wells in 1941. (3) The payments made by the taxpayer in the taxable years to his co-owner Luse with respect to the drilling and development expenses constituted repayments of loans arising out of Luse's advances therefor in behalf of the taxpayer in 1941. (4) The respondent calls attention that although the Tax Court based its conclusion on a holding that Luse in effect loaned taxpayer the funds with which to pay the expenses in 1941, it pointed out additionally that the evidence strongly indicates that the taxpayer and his co-owner Luse were operating the oil leases as a mining partnership or joint adventure.

Deductions for business expenses must be taken for the taxable year during which the expenses are "paid or incurred", dependent upon the method of accounting upon the basis on which the net income is computed, unless in order to clearly reflect the income the deductions should be taken as of a different period. 26 U.S.C.A. §§ 23(a)(1)(A), and 43; Treasury Regula-

---

1.  15 T.C. 231, where the facts are fully set out and the reasons for the decision given.

tions 111, Secs. 29.23(a)–1, 29.43–1, 29.-43–2. The cases relied upon by the petitioners and heretofore cited and many others establish the rule that "Taxpayers on a cash basis * * * have no right to a deduction until they make payment", 2 Mertens Law of Federal Income Taxation, Sec. 12.53. The qualifying clause in Section 43, 26 U.S.C.A. § 43, "unless in order to clearly reflect the income the deductions or credits should be taken as of a different period" "was not intended to upset the well understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer." Security Flour Mills Co. v. Commissioner, 321 U. S. 281, 285, 286, 64 S.Ct. 596, 598, 88 L.Ed. 725. The respondent urges upon us the principle that taxpayers may not select, for their own benefit, the taxable years they desire in which to take deductions from gross income. I do not think that principle is applicable here because the taxpayer's testimony was not contradicted that, "He reimbursed Luse in 1944 and 1945, and that was as quickly as he could."

Treasury Regulations 111, Section 29.-23(m)–16, with respect to the drilling and development of oil and gas wells, gives to a taxpayer for taxable years beginning prior to January 1, 1943, an option to charge certain items either to capital or to expense and provides that an election once made is binding for all subsequent years. I do not think that the Regulation intended to prescribe the tax year for which such expenses might be deducted differently from 26 U.S.C.A. §§ 23(a) and 43. If so, the provisions of the Internal Revenue Code control over the Regulation.

The Tax Court did not mention the respondent's contentions numbered 1 and 2, supra, but based its decision upon the one numbered 3 saying that, "When Luse advanced money to discharge petitioner's pro rata share of the drilling and development expenses in 1941, he in effect loaned petitioner the funds with which to make payment and petitioner used them for this purpose." Did the payments by Luse in legal effect constitute loans to the taxpayer? The Tax Court found as a fact that, "He (taxpayer) had no previous arrangement with Luse that the latter would finance him or loan him money, and Luse did not ask him when he was going to pay his share of the drilling expenses." In the face of that clear finding of fact, fully supported by the record, I do not think that the inference or conclusion is justified that the taxpayer borrowed from Luse. No interest was charged, paid or claimed; no note was executed and there was no evidence of any understanding between Luse and taxpayer as to a loan, unless such an understanding is implied by law.

Luse alone signed the drilling contract as to the Hlavaty lease. The drilling contract as to the Peyregne lease was signed by both Luse and the taxpayer, but Luse was liable to the driller for the entire obligation. 12 Am.Jur., Contracts, Sec. 270. If Luse was not to default on his legal obligation, he had to pay the entire debt. The result was that Luse became subrogated to the rights of the creditor. The original obligation, notwithstanding its payment and discharge, was kept alive for Luse's benefit and protection. 50 Am.Jur., Subrogation, Secs. 67, 112, Restatement of Am.Law Inst., Restitution, Sec. 41(a). (i), page 162; Lindsley v. Lewis, Tex. Civ.App., 89 S.W.2d 413, 416; Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 680, 77 A.L.R. 663. Luse's payment of all of the drilling expenses was not a voluntary loan to taxpayer. Rather, its legal effect was that insofar as the taxpayer was concerned the rights of the driller were assigned to Luse. Restatement Am.Law Inst., Restitution, page 660; 50 Am.Jur., Subrogation, Secs. 4, 112; see United States Fidelity & Guaranty Co. v. First National Bank, 5 Cir., 172 F.2d 258, 263.

As to the half hearted suggestion that Luse and the taxpayer were mining part-

ners or joint adventurers, the law is well settled in Texas, as generally, that "Cotenants may become partners if they agree to assume that relation toward each other; but the law does not create that relation for them as the consequence of a course of conduct and dealing naturally referable to a relation already existing between them, making such a course of conduct to their common advantage. Where they merely agree to carry on mining or other operations on their lands, each contributing toward the expenses in proportion to his respective interest or estate in the land, they are considered, with respect to both themselves and third persons, as the ordinary owners of land working their respective shares, responsible only for their own acts and, therefore, not subject to the ordinary laws of partnership." 36 Am.Jur., Mines and Minerals, Sec. 170. See also, 40 Am. Jur., Partnership, Secs. 4 and 5; Cox v. Bond, Tex.Civ.App., 91 S.W.2d 479, 481; Snodgrass v. Kelley, Tex.Civ.App., 141 S.W.2d 381, 383; Smith v. Rampy, Tex. Civ.App., 198 S.W.2d 592, 594.

In my opinion, the taxpayer on the cash basis was entitled to deduct the expenses during the years that he made actual payment. I therefore respectfully dissent.