H. ROGER LAWLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lawler v. Commissioner
Docket No. 19653-93
United States Tax Court
T.C. Memo 1995-26; 1995 Tax Ct. Memo LEXIS 29; 69 T.C.M. (CCH) 1699; January 23, 1995, Filed *29 Decision will be entered under Rule 155. Held: P's interest expense of $ 3,020,740 is deductible as "qualified residence interest" under sec. 163(h)(2)(D), I.R.C.Held, further, P may deduct the $ 53,536 in loan application fees that he paid and forfeited in 1989, under sec. 212, I.R.C.Held, further, P may not deduct any of the $ 16,900 in travel expenses in issue. Held, further, P must report a $ 3,642 short-term capital gain from his trading in currency futures contracts. Held, further, P's 1989 and 1990 legal and other professional fees are deductible under sec. 212, I.R.C., and P may not deduct any of the other expenses reported on his 1990 Schedule C, Profit or Loss from Business. Held, further, P may not deduct the depreciation of $ 3,690 claimed on his 1989 Schedule A, Itemized Deductions. Held, further, P may not deduct a $ 135,433 net operating loss (NOL) for 1989, that he purportedly incurred in 1990. Held, further, P may not deduct a $ 288,368 NOL for 1989 that he purportedly incurred in 1992. For petitioner: Marilyn S. Shell, Donald L. Wilson, and William M. Penny, Jr. (specially recognized). For respondent: *30 James F. Prothro. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: H. Roger Lawler petitioned the Court on September 13, 1993, to redetermine respondent's determination of deficiencies of $ 702,288.28 and $ 38,935.07 in his 1989 and 1990 Federal income taxes, respectively. [1] Respondent's determination is reflected in two notices of deficiency issued to petitioner on June 17, 1993. We separately refer to the 1989 and 1990 notices as the First Notice and the Second Notice, respectively. We collectively refer to these notices as the Notices. Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the years in issue. Following concessions by respondent, [2] we must decide: 1. Whether petitioner must deduct the deficiency interest of $ 3,020,740 claimed on his 1989 *31 Schedule C, Profit or Loss From Business, as personal interest. We hold that he may deduct this interest as "qualified residence interest" under section 163(h)(2)(D). 2. Whether $ 53,536 in loan application fees that petitioner paid in 1989 is deductible under section 212, rather than under section 162 or as a capital loss. We hold that it is deductible under section 212. 3. Whether petitioner may deduct $ 16,900 in travel expenses for 1989. We hold that he may not. 4. Whether petitioner may deduct a short-term capital loss of $ 9,349 for 1989 from his trading in currency futures contracts, or, alternatively, whether he must report a $ 3,642 short-term capital gain. We hold that he must report a $ 3,642 short-term capital gain. 5. Whether legal and other professional fees of $ 233,785, claimed as a trade or *32 business expense on petitioner's 1989 Schedule C, are deductible under section 212 and not as a trade or business expense. We hold that they are deductible under section 212. 6. Whether petitioner may deduct legal and other professional fees of $ 247,277, and other business expenses of $ 31,633, claimed as trade or business expenses on his 1990 Schedule C. We hold that the professional fees of $ 247,277 are deductible under section 212. We also hold that petitioner may not deduct the other claimed expenses. 7. Whether petitioner may deduct depreciation of $ 3,690 claimed on his 1989 Schedule A, Itemized Deductions. We hold that he may not. 8. Whether petitioner may deduct a $ 135,433 net operating loss (NOL) in 1989 that he purportedly incurred in 1990. We hold that he may not. 9. Whether petitioner may deduct a $ 288,368 NOL in 1989 that he purportedly incurred in 1992. We hold that he may not. FINDINGS OF FACT [3]
*33 Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. Petitioner resided in Woodside, California, when he petitioned the Court. [4] Petitioner filed 1989 and 1990 Forms 1040, U.S. Individual Income Tax Returns, on October 15, 1990, and October 18, 1991, respectively. For his 1989 taxable year, petitioner also filed: (1) A Form 1040X, Amended U.S. Individual Income Tax Return (First 1989 Form 1040X); (2) a second Form 1040X (Second 1989 Form 1040X); and (3) a third Form 1040X (Third 1989 Form 1040X). Petitioner was a calendar year taxpayer who used the cash receipts and disbursements method of accounting for Federal income tax purposes during the years relevant herein. *34 Petitioner managed rental properties and invested in tracts of unimproved property in the 1960s. Petitioner expanded his operation to include the construction and operation of large apartment complexes. Petitioner also diversified his investments into farms, ranches, and undeveloped property. In 1968, petitioner created the Lawler Family Trusts of April 10, 1968 (the Trusts), for the benefit of his six children. [5] Petitioner conveyed most of his property to the Trusts in 1969. For several years thereafter, the Trusts owned and operated apartments, farmland, and land suitable for development. Sources of income for the Trusts during the period from 1968 through 1978 included proceeds from the sale of real property, operation of the apartment houses, and farming. The Trusts filed Forms 1041, U.S. Fiduciary Income Tax Return, to report their operations. *35 On May 1, 1973, the Trusts transferred most of their property to the newly formed Lawler Corp. (Corporation). Sources of income for Corporation included proceeds from the sale of the properties, farming, and rentals. About the same time, petitioner formed Lawler Management Co. (Management) to manage the properties held by Corporation. The primary source of Management's income was management fees. Management mainly operated the apartments and farms and collected the rents. Corporation and Management filed Forms 1120, U.S. Corporation Income Tax Return, to report their operations. Petitioner acquired a cattle ranch in Nevada in 1973, and formed the Lawler Cattle Co. (Cattle) to assist in his cattle operations. Cattle filed a 1973 Form 1120 to report its operations. Petitioner's Nevada ranching operations suffered during 1974, and he remained liable for more than $ 1 million in claims of creditors. These creditors commenced an involuntary bankruptcy proceeding against petitioner in the State of Nevada during 1976. This proceeding was subsequently transferred to Dallas, Texas. Respondent [6] asserted claims in this proceeding against petitioner for income tax liabilities for *36 his 1969 through 1978 taxable years. [7] The allegations underlying respondent's assertion were that certain related entities (including the Trusts, Corporation, Management, and Cattle) were alter egos of petitioner and that he held property primarily for sale to customers in the ordinary course of his trade or business. In or about 1980, petitioner settled the tax issues with respondent (hereinafter this settlement is referred to as the Tax Settlement Agreement). The Tax Settlement Agreement was approved by the bankruptcy court and became effective on December 20, 1983. The bankruptcy proceeding was terminated on August 25, 1989. The Tax Settlement Agreement provided *37 that all liabilities of petitioner and of the related entities for income taxes, interest, and additions to tax for the 1969 through 1978 taxable years would be satisfied by petitioner's paying $ 3 million in taxes, $ 2 million in interest, and additional interest of 11 percent per annum on the unpaid balance of the $ 3 million tax liability. Petitioner made a $ 1 million cash payment towards the $ 3 million principal in 1984, and, on September 17, 1984, executed and delivered a $ 4 million note (the Note) for the remaining principal and $ 2 million in interest. The Note was secured by a deed of trust on the "Lawler Farm"; i.e., 1,105.795 acres owned by petitioner in Collin County, Texas (Collin County). Petitioner resided in a house built on a 39.8-acre parcel of the Lawler Farm. Petitioner used the remaining acreage in his farming business. [8] The deed of trust on the Lawler Farm was properly recorded and perfected in accordance with the laws of the State of Texas. *38 Petitioner did not timely pay respondent under the Tax Settlement Agreement. The Department of Justice (on behalf of respondent) attempted to collect on the Note beginning in 1988. Petitioner filed a second bankruptcy action in Sherman, Texas, during respondent's attempted collection of the Note under the Tax Settlement Agreement. In 1989, petitioner spent $ 53,536 for loan application fees in order to obtain a $ 9.7 million loan. The loan was to be secured by 99 acres of land that petitioner owned in Collin County. The purpose of the loan was to pay off the Note. Later that year, petitioner learned that he would not receive the financing. The loan application fees were forfeited. Petitioner paid respondent $ 2 million on the principal on the Note in June 1989, and paid interest of $ 3,020,740 on December 26, 1989. [9] Petitioner reported his payment of the $ 3,020,740 in interest on his 1989 Schedule C as an ordinary and necessary business expense. [10] Respondent determined that this interest was "personal interest" that was deductible only as an itemized deduction, to the extent permitted by section 163(d)(6)(B) and (h)(5), under which the deduction for personal interest *39 is limited to 20 percent of such interest for tax year 1989. OPINION The burden of proof is on petitioner to show that respondent's determinations set forth in the Notices are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner also bears the burden of proving his entitlement to any deduction that he claimed after respondent issued the Notices. Deductions are strictly a matter of legislative grace, and petitioner must show that his claimed deductions are allowed *40 by the Code. Petitioner must also keep sufficient records to substantiate any deduction that would otherwise be allowed by the Code. Sec. 6001; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). In order to meet his burden of proof, petitioner must introduce sufficient evidence to: (1) Make a prima facie case establishing that respondent committed the errors alleged in the petition and (2) overcome the evidence submitted by (or otherwise favorable to) respondent. Lyon v. Commissioner, 1 B.T.A. 378, 379 (1925). Issue 1. Deficiency Interest of $ 3,020,740
Section 163(a) generally allows a cash method individual to deduct any interest paid by him or her within the taxable year on indebtedness. Section 163(h)(1), however, prohibits the deduction of any interest that is "personal interest". [11] Respondent claims that the interest at bar is personal interest under section 163(h)(2). Petitioner disagrees. Petitioner primarily alleges in his petition that this interest is not personal interest because it is "qualified residence interest" under section 163(h)(2)(D) and (3). In the alternative, petitioner *41 alleges, this interest is not personal interest because it is either: (1) Properly allocable to a trade or business expense, see sec. 163(h)(2)(A), or (2) investment interest, see sec. 163(d), (h)(2)(B). We agree with petitioner that the interest is not personal interest. Petitioner's interest is "qualified residence interest" under section 163(h)(2)(D) and (3). The term "qualified residence interest" generally includes any interest that a taxpayer pays during the taxable year on any indebtedness that is secured by a "qualified residence". Sec. 163(h)(3). A residence is a "qualified residence" if it is either the taxpayer's: (1) Principal residence or (2) one other residence that he or she selects. Secs. 163(h)(4)(A)(i), 280A(d)(1); see also sec. 1.163-10T(p)(3)(ii) and (iii), Temporary Income Tax Regs., 52 Fed. Reg. 48418 *42 (Dec. 22, 1987) (house considered to be used as a residence if it is never rented during the taxable year). [12]
Respondent argues that petitioner's interest is not qualified residence interest because the underlying indebtedness was not secured by a "qualified residence". According to respondent, the Lawler Farm was not a qualified residence because petitioner designated it as his "1 other residence" at or after the time that he petitioned the Court in the instant matter. We disagree. We do not believe that the timing of petitioner's *43 selection defeats it or otherwise lessens its validity. Indeed, we find nothing in the Code or respondent's regulations (and respondent has cited no such provision) that would fix the time to make such an election. Accordingly, we find that petitioner's selection is a valid election to treat his residence on the Lawler Farm as his "1 other residence". Given the additional fact that the Note was secured by this residence from the making of the Note until its payment in full, we hold that petitioner may deduct the $ 3,020,740 in interest as qualified residence interest. Having agreed with petitioner's primary argument that the interest is qualified residence interest, we do not consider his alternative positions with respect to the deductibility of the interest. Issue 2. Loan Application Fees of $ 53,536
In his First 1989 Form 1040X, petitioner claimed a $ 53,536 capital loss with respect to fees on a loan application. Respondent determined that petitioner could not claim a capital loss for these fees. Respondent determined that petitioner could deduct these fees as a miscellaneous itemized deduction subject to the 2-percent floor in section 67(a). Respondent reflected *44 her determinations in the First Notice. Petitioner argues in his brief that he may deduct these fees as a capital loss. Petitioner alternatively argues in his brief that the fees are deductible as a trade or business expense. In order for the loan application fees to be deductible as a trade or business expense in the year in issue, petitioner's incurrence of these fees must be directly related to a trade or business. Whether petitioner's payment of the loan application fees was directly related to a trade or business is a factual determination. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). We look to the origin of the fees, United States v. Gilmore, 372 U.S. 39, 49 (1963); Dowd v. Commissioner, 68 T.C. 294, 303-304 (1977), [13] and are not persuaded that these fees had a proximate relationship to any trade or business of petitioner. See Artstein v. Commissioner, T.C. Memo. 1970-220. Thus, we conclude that petitioner has not met his burden of proving that his payment of the loan application fees was business related. In addition, because the fees *45 were forfeited in the same year in which they were paid, we do not allow petitioner to claim a capital loss for them. Rather, we sustain respondent's determination that petitioner may deduct these fees under section 212. Issue 3. Travel Expenses
Petitioner had an American Express card during 1988 and 1989 in the name of "H. Roger Lawler". During those years, petitioner charged $ 11,910.43 on this card primarily for airplane tickets, lodging, food, rental cars, and gasoline. Most, but not all, of these charges were incurred in Dallas, Texas, and Northern California. In petitioner's First 1989 Form 1040X, he claimed a $ 16,900 *46 deduction for travel expenses incurred in his business of bankruptcy management. In respondent's First Notice, she reflected her denial of this claim by stating that "the deductions you claimed for * * * travel expenses * * * were not allowed because you did not provide adequate documentation to substantiate the amounts and/or deductibility of the amounts claimed." Petitioner alleges that he may deduct the travel expenses as ordinary and necessary expenses incurred in connection with a trade or business, or, alternatively: (1) For the production of income, (2) for the management, conservation or maintenance of property held for the production of income, or (3) for the determination, collection or refund of any tax. We disagree with all of petitioner's allegations. An individual generally may not deduct personal travel expenses. Sec. 262(a). A taxpayer, however, may deduct personal travel expenses paid or incurred by him or her during the taxable year if the expenses otherwise qualify under section 162(a) or 212, and he or she meets the rigid substantiation requirements of section 274(d) by adequate records or other sufficient evidence. Sec. 274(d)(1); Meridian Wood Prods. Co. v. United States, 725 F.2d 1183, 188-1191 (9th Cir. 1984); *47 Habeeb v. Commissioner, 559 F.2d 435, 437 (5th Cir. 1977), affg. T.C. Memo. 1976-259; Johnston v. Commissioner, T.C. Memo. 1980-477, affd. 696 F.2d 1003 (9th Cir. 1982). These substantiation requirements override the so-called Cohan rule, Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), which permits us to estimate the amount of deductible expenses in other contexts. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985); see also Lewis v. Commissioner, 560 F.2d 973, 977 (9th Cir. 1977), revg. T.C. Memo. 1974-59; Dowell v. United States, 522 F.2d 708, 710-712 (5th Cir. 1975). Petitioner argues that "The evidence demonstrates that petitioner's travel expenses occurred primarily between Dallas and California where petitioner owned *48 properties used in his trade or business. Consequently, the amount of $ 16,900 is deductible from gross income pursuant to subsections 62(a)(1) and 162(a)(2)." We disagree. The mere fact that petitioner may own business or investment property in a certain location does not mean that any expenses incurred by him in traveling to that location are automatically deductible under section 162(a) or 212. Habeeb v. Commissioner, supra at 437; Dowell v. United States, supra at 712-714. Petitioner has failed to convince us that he is entitled to deduct any of the claimed expenses. Although he presented limited documents (e.g., credit card statements) to show that he incurred some of these expenses, and testified generally about his alleged reasons for incurring travel expenses, we find this evidence insufficient to meet the strict substantiation requirements of section 274(d). Petitioner has failed to prove: (1) The date for most of the travel expenses, (2) the business nexus for any of the claimed expenses, and (3) that these travel expenses were ordinary and necessary expenses incurred in connection with a trade or *49 business, for the production of income, for the management, conservation or maintenance of property held for the production of income, or for the determination, collection, or refund of any tax. [14] Accordingly, petitioner has left us with no choice but to sustain respondent's determination with respect to this issue. Issue 4. Short-Term Capital Gain or Capital Loss
Petitioner traded in currency *50 future contracts during his 1989 taxable year. Respondent's First Notice reflected her determination that petitioner failed to report a short-term capital gain of $ 3,642 that he realized on the sale of these contracts in 1989. Petitioner's accountant, Clyde Bailey, C.P.A. (Accountant), concluded that petitioner should deduct a $ 9,349 capital loss rather than the $ 3,642 gain determined by respondent. Petitioner filed the Second 1989 Form 1040X to claim, in part, that he was entitled to this loss. Petitioner reflected this claim in his petition. Gross income includes all income from whatever source derived, including gains derived from dealings in property. Sec. 61(a)(3). Petitioner did not report a short-term capital gain of $ 3,642 from the sale of currency contracts in 1989. Respondent determined that he should have. Petitioner failed to present any persuasive evidence at trial to disprove respondent's determination. We find that the testimony of Accountant, who prepared petitioner's tax returns for the years in issue and whom petitioner called at trial to support his claim that he was entitled to the $ 9,349 loss, was not enough to disprove respondent's determination. *51 We find Accountant's testimony unpersuasive and afford it little weight. We are also unpersuaded by petitioner's documentary evidence; i.e., a copy of a portion of petitioner's 1989 commodity/futures trading account record from the brokerage firm of Shearson, Lehman, Hutton, Inc. (Exhibit 91). To state the obvious, Exhibit 91 does not include all of the currency trades that petitioner made in 1989. For the foregoing reasons, we sustain respondent's determination with respect to this issue. Petitioner must report a $ 3,642 capital gain and may not deduct a $ 9,349 capital loss. Issues 5 and 6. Deductions for Professional Fees and Other Expenses
a. Deduction of $ 233,785 on Petitioner's 1989 Schedule C
Petitioner filed a 1989 Schedule C that listed his principal business as "Bankruptcy Management". Petitioner reported no gross income on this Schedule C, and reported that he had incurred a $ 3,256,115 loss from this business. This $ 3,256,115 loss included a deduction for $ 233,785 in legal and professional fees. [15] Petitioner alleges in his petition that he paid the $ 233,785 in legal fees as ordinary and necessary expenses incurred in carrying on his trade or *52 business. Respondent's First Notice reflects her disallowance of this amount as a trade or business expense. Respondent stated in her First Notice: "It has been determined that the legal fees claimed on your Schedule C for 1989 are disallowed because it has not been established that it was an ordinary and necessary business expense paid or incurred in carrying on a trade or business." Respondent's notice allows petitioner to deduct the $ 233,785 in expenses as a miscellaneous itemized deduction subject to the 2-percent floor in section 67(a). Section 162(a) allows an individual to deduct all of the ordinary and necessary expenses of carrying on a trade or business. Section 212 allows an individual to deduct all of the ordinary and necessary expenses paid or incurred in connection with: (1) The production of income, (2) the management, conservation *53 or maintenance of property held for the production of income, or (3) the determination, collection or refund of any tax. Sections 162(a) and 212 are considered in pari materia, except for the fact that section 212 does not require that the income-producing activity be a trade or business. Woodward v. Commissioner, 397 U.S. 572, 575 n.3 (1970); United States v. Gilmore, 372 U.S. 39, 44-45 (1963); Salley v. Commissioner, 464 F.2d 479, 483 n.7 (5th Cir. 1972), affg. 55 T.C. 896 (1971). A deduction under section 162(a) is subtracted in full from gross income to arrive at adjusted gross income. A deduction under section 212 is subtracted from adjusted gross income and is subject to certain floor limitations in section 67(a). Whether an expense is deductible under section 162(a) rather than under section 212 depends on whether it has the requisite connection with the taxpayer's business. Costs associated with litigation are deductible under section 162(a) provided that the origin and character of the claim underlying the litigation have a sufficient business nexus. *54 United States v. Gilmore, supra at 49. Respondent generally argues in her brief that petitioner is not allowed to deduct any of the claimed legal or professional fees for 1989 because petitioner has not shown that these amounts were paid. Respondent is mistaken. Given that her First Notice reflects her determination that these amounts are deductible as a miscellaneous itemized deduction, we are unable to agree that she has determined that petitioner has not paid these amounts. Moreover, the record adequately substantiates that petitioner did pay these amounts. Notwithstanding the fact of payment, however, petitioner must also prove that these amounts are for trade or business expenses in order to deduct them under section 162(a). We are not persuaded that petitioner has done so. Although petitioner introduced numerous invoices to support his 1989 deduction for legal and professional fees, he failed to prove that these expenses were related to a trade or business of his own. Accordingly, petitioner has left us no alternative but to sustain respondent's determination with respect to this issue. b. Deduction of $ 247,277 on Petitioner's *55 1990 Schedule C
Petitioner filed a 1990 Schedule C that listed his principal business as "Management". Petitioner reported no gross income on this Schedule C, and reported that he had incurred a $ 278,912 loss from this business. This $ 278,912 loss included a deduction for $ 247,277 in legal and professional fees. Petitioner alleges that he paid these fees during 1990 as an ordinary and necessary business expense incurred in carrying on his trade or business of "Management", or, alternatively, as an ordinary and necessary expense for the production of income, for the management, conservation or maintenance of property held for the production of income, or in connection with the determination, collection, or refund of any tax. Respondent's Second Notice disallowed a business deduction for the fees of $ 247,277. Respondent stated in her Second Notice: "It is determined that the Schedule C expenses claimed on your 1990 return are disallowed because it has not been established that the expenses were ordinary and necessary business expenses or that any amount was expended." In contrast to the 1989 legal and professional fees, respondent determined that petitioner did not pay *56 the 1990 legal and professional fees shown on his 1990 Schedule C. We disagree. Based on our careful review of the record, we are confident that he did pay these fees and that they related to profit-seeking activities conducted by him, or to the determination of his taxes. We are less confident, however, that these profit-seeking activities rose to the level of a trade or business. Thus, we hold that petitioner may deduct these legal and professional fees, not as business expenses under section 162, but under section 212 as a miscellaneous itemized deduction subject to the 2-percent floor in section 67(a). c. Other Business Expenses Reported on 1990 Schedule C
In addition to the legal expenses above, petitioner deducted the following expenses on his 1990 Schedule C that listed his principal business as "Management": Car and truck expenses ($ 3,065), insurance ($ 4,152), depreciation ($ 2,862), utilities ($ 4,204), and other expenses ($ 17,352). Respondent's Second Notice reflects her disallowance of these amounts as trade or business expenses. Respondent stated in her Second Notice: "It is determined that the Schedule C expenses claimed on your 1990 return are disallowed *57 because it has not been established that the expenses were ordinary and necessary business expenses or that any amount was expended." Petitioner has presented insufficient evidence to prove that he is entitled to any of these deductions. Accordingly, we sustain respondent's determination with respect to this issue. Issue 7. Depreciation Deduction
Petitioner claimed a $ 3,690 deduction for depreciation on his 1989 Schedule A. Petitioner claimed the depreciation on a 1985 Jeep. In his First 1989 Form 1040X, petitioner claimed that the depreciation deduction of $ 3,690 should have been reported as a trade or business expense on Schedule C. Respondent determined, and reflected in her First Notice, that petitioner was not entitled to this depreciation deduction. Petitioner has not met his burden of proving that he is entitled to this depreciation deduction. Among other things, the record does not adequately support the cost of the Jeep or that it was used in petitioner's trade or business. Although petitioner testified briefly as to the situs of the Jeep, we find this testimony unsupported by any other evidence in the record. Accordingly, we sustain respondent's determination *58 with respect to this issue. [16]
Issues 8 and 9. NOL Carrybacks
Section 172 allows a taxpayer to deduct an NOL for the taxable year. The amount of the NOL deduction equals the sum of the NOL carryovers plus NOL carrybacks to that year. Sec. 172(a). Absent an election to the contrary, an NOL for any taxable year must first be carried back 3 years and then forward 15 years. Sec. 172(b)(1)(A), (2), and (3). Petitioner bears the burden of proving his right to deduct an NOL in 1989. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955). A deduction for an NOL is allowable to petitioner as a matter of legislative grace; it is not a matter of right. Id. at 235; Deputy v. DuPont, 308 U.S. 488, 493 (1940). *59 Petitioner also bears the burden of proving the amount (if any) of the NOL that he may deduct in 1989. Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958); Vaughan v. Commissioner, 15 B.T.A. 596 (1929). Petitioner may not simply rely on the returns for the years involved to support his claim of an NOL carryback to 1989. Jones v. Commissioner, supra at 1104. a. Carryback to 1989 of 1990 NOL of $ 135,433
In his First 1989 Form 1040X, petitioner claimed a $ 135,433 deduction for 1989 based on an NOL carryback from 1990. In her First Notice, respondent reflected her denial of this claim by stating: "the * * * [deduction] you claimed for * * * the net operating loss carryback from 1990 * * * [was] not allowed because you did not provide adequate documentation to substantiate the amounts and/or deductibility of the amounts claimed." Petitioner has failed to disprove respondent's determination. Even assuming arguendo that petitioner suffered an NOL in 1990, petitioner also failed to prove that *60 any or all of this NOL would not have been absorbed in his 1987 or 1988 taxable year. Sec. 172(b)(1)(A) and (2). b. Carryback to 1989 of 1992 NOL of $ 288,368
In his Third 1989 Form 1040X, petitioner claimed a $ 288,368 deduction for 1989 for an NOL carryback from 1992. Petitioner stated in his petition that the 1992 NOL was primarily generated by a "taxable transfer of two (2) rental condominiums in exchange for property of unlike kind resulting in a substantial loss." As is true with petitioner's claimed NOL above, petitioner has presented insufficient evidence to establish that he suffered an NOL for 1992. Accordingly, we conclude that petitioner is not entitled to carryback to 1989 any purported NOL from 1992. We have considered all arguments made by the parties and, to the extent not discussed above, find them to be without merit. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. On Oct. 14, 1994, petitioner filed an amended petition. We hereinafter use the term "petition" to refer to the amended petition.↩
2. Respondent conceded that petitioner is entitled to: (1) A $ 10,000 nonbusiness bad debt deduction for 1989, and (2) $ 2,000 and $ 2,050 deductions for 1989 and 1990, respectively, for exemptions.↩
3. Petitioner requested in his brief that we find as facts certain allegations made by the parties in connection with petitioner's motion for summary judgment that we denied in an oral opinion of this Court dated May 2, 1994. We refuse to do so. Any allegations that were made by the parties in connection with petitioner's motion for summary judgment are not facts found by the Court for purposes of the trial. Rule 121(c). Although either party could have moved the Court to find as facts any of the allegations, see Rule 121(c), neither party did so.↩
4. The petition lists petitioner's residence as Allen, Texas. Petitioner contends he resided in Texas when he filed his petition. Respondent disagrees. She contends that the facts of this case establish that petitioner resided in Woodside, California, when he petitioned the Court. We agree with respondent. We are satisfied that petitioner was domiciled in Woodside, California, when he filed his petition with this Court, and, therefore, find that he resided at that location. Sec. 7482(b)(1)(A); Soboleski v. Commissioner, 88 T.C. 1024, 1035 (1987), affd. without published opinion 842 F.2d 1292 (4th Cir. 1988); Brewin v. Commissioner, 72 T.C. 1055, 1059 (1979), revd. and remanded on other issues 639 F.2d 805↩ (D.C. Cir. 1981). We note, however, that this finding is not critical to our holdings herein because we have found no material difference between precedent in the Fifth Circuit and that in the Ninth with respect to any issue presented here.
5. Petitioner formed the Trusts in order to transfer his estate to his six children from time to time by way of gift. Petitioner had been advised that tax advantages flowed from forming the Trusts for his children.↩
6. For simplicity and ease, we use the term respondent to include the U.S. Government, which was the party in the bankruptcy action.↩
7. As of July 5, 1979, respondent had filed a proof of claim for alleged income tax deficiencies of $ 2,579,352.41. In November 1979, respondent amended her claim to allege income tax deficiencies of over $ 10 million.↩
8. As of Oct. 13, 1987, the fair market value of the house and surrounding 39.8 acres was over $ 4 million.↩
9. The deed of trust on the Lawler Farm was not released prior to final payment of all of the interest and principal on the Note.↩
10. Petitioner filed the Second 1989 Form 1040X to assert alternatively that the interest was deductible because it was qualified residential interest. Petitioner's Third 1989 Form 1040X claimed therein that he was making "a protective selection of the Lawler Farm, Collin County, Texas, as the '1 other residence' as defined in Code Section 163(h)(4)(A)(i)(II)↩".
11. But see sec. 163(h)(5)↩ (transitional phase-in rule allowing deduction of certain percentages of "personal interest" for the 1987 through 1990 taxable years).
12. In the case of indebtedness incurred after Oct. 13, 1987, sec. 163(h)(3)(B)(ii) and (C)(ii) limits the amount of debt on which qualified residence interest may be paid. See also sec. 163(h)(3)(D)(i). These limitations are not applicable here, however, because the debt underlying the Note was incurred before Oct. 14, 1987, and was secured by a qualified residence on Oct. 13, 1987, and at all times thereafter until the $ 3,020,740 in interest was paid. See sec. 163(h)(3)(D)(i), (iii)(I)↩.
13. In United States v. Gilmore, 372 U.S. 39 (1963), the Supreme Court dealt with a deduction claimed under a predecessor to sec. 212. The "origin of the claim" test enunciated in the Gilmore case is also applicable to sec. 162(a) because the relevant portions of those two sections are read in pari materia. Id.↩ at 45.
14. A careful examination of petitioner's American Express statements also discloses that some of the charges were made in 1988. A cash method individual must deduct expenses charged to an American Express card in the year that the expenses are charged, rather than a later year in which American Express is repaid. See Granan v. Commissioner, 55 T.C. 753, 755 (1971); McAdams v. Commissioner, 15 T.C. 231, 235 (1950), affd. 198 F.2d 54 (5th Cir. 1952); see also Rev. Rul. 78-38, 1978-1 C.B. 67↩.
15. This $ 3,256,115 loss also included the $ 3,020,740 deduction for interest mentioned above, a $ 540 deduction for depreciation, and a $ 1,050 deduction for trustee's fees.↩
16. Petitioner has also argued in his brief that he can deduct the $ 540 of depreciation reported on his 1989 Schedule C. We need not address this issue because respondent did not deny this depreciation deduction in the Notices.↩